# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CERTIFIED NUTRACEUTICALS, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE CLOROX COMPANY, et al., <br><br> Defendants. | Case No.: 18-CV-0744 W (KSC) <br><br> **ORDER DENYING DEFENDANTS' MOTION TO DISMISS [DOC. 22]** |

Pending before the Court is a motion to dismiss Plaintiff's Second Amended Complaint ("SAC") brought by Defendants the Clorox Company, Nutranext, and Neocell Holding Company. [Doc. 22.] The Court decides the matters on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons that follow, the Court **DENIES** the motion.

//
//
//
//
//
//

1

## I. BACKGROUND

According to the Second Amended Complaint ("SAC"), "[t]his lawsuit arises from Defendants['] deceptive marketing practices selling inferior chicken carcasses . . . ." (*SAC* [Doc. 21] ¶ 1.) The SAC alleges that Defendants the Clorox Company, Neocell Holding Company, and Nutranext are retailers that sell dietary supplements using the raw materials provided by Plaintiff's competitor, Avicenna Nutraceutical, LLC ("Avicenna"). (*See SAC* [Doc. 21] ¶¶ 20–32.)

The SAC alleges that Clorox, Neocell, and Nutranext "have been falsely passing off inferior products as Chicken Sternum Collagen Type II[,]" which is contained in Plaintiff's product. (*SAC* [Doc. 21] ¶¶ 16, 20, 32.) "Avicenna sells chicken collagen which it passes off as Chicken Sternum Collagen Type II, but, in reality, is derived from Chicken 'full frames.'" (*Id.* [Doc. 21] ¶ 22.) "Avicenna sold its raw materials to [Clorox, Neocell, and Nutranext] at the price of $22[/]kg, however the market rate for Chicken Sternum Collagen Type II is $85/kg, which provides [Clorox, Neocell, and Nutranext] with an unfair competitive advantage. Avicenna and [Clorox, Neocell, and Nutranext] knew, or should have known that their practices were deceptive." (*Id.* [Doc. 21] ¶ 23.)

The SAC further alleges that "[Clorox, Neocell, and Nutranext, among others] purchase Avicenna's products and in turn pass them off as Chicken Sternum Collagen Type II so that they can market their respective retail products as containing the benefits of Chicken Sternum Collagen Type II, when they know this is false." (*SAC* [Doc. 21] ¶ 25.) It alleges that this gives them an unfair competitive advantage in the marketplace and decreases the demand for Chicken Sternum Collagen Type II. (*Id.* [Doc. 21] ¶ 32.)

//
//
//

## II. LEGAL STANDARDS

### A. Motion to Dismiss for Lack of Standing

The Court must dismiss a cause of action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "The party asserting federal subject matter jurisdiction bears the burden of proving its existence." Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010) (citing Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994)). Article III of the United States Constitution limits the subject matter jurisdiction of federal courts to "Cases" and "Controversies." See Lujan v. Defs. of Wildlife, 504 U.S. 555, 559 (1992). This limitation forms "the core component of standing[,]" a doctrine that ensures federal courts decide only those cases "that are of the justiciable sort referred to in Article III[,]" those that are " 'appropriately resolved through the judicial process[.]' " Id. (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)).

As an "irreducible constitutional minimum[,]" standing is a fundamental part of every federal case, a limitation on subject matter jurisdiction. See Chandler, 598 F.3d at 1122; Lujan, 504 U.S. at 560. It consists of three elements—all of which the party asserting federal jurisdiction must establish: (i) injury; (ii) causation; and (iii) redressability. See id.

> **First, the plaintiff must prove that he suffered an "injury in fact", i.e., an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."**
>
> **Second, the plaintiff must establish a causal connection by proving that [his] injury is fairly traceable to the challenged conduct of the defendant.**
>
> **Third, the plaintiff must show that [his] injury will likely be redressed by a favorable decision.**

Chandler, 598 F.3d at 1122 (quoting and citing Lujan, 504 U.S. at 560–61).

**B. Motion to Dismiss Pursuant to Rule 12(b)(6)**

The Court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Balisteri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." Vasquez v. L.A. Cnty., 487 F.3d 1246, 1249 (9th Cir. 2007).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

Well-pled allegations in the complaint are assumed true, but a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. See Papasan v. Allain, 478 U.S. 265, 286 (1986); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

**C. Pleading Fraud per Rule 9(b)**

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir.

4

2003) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)) Plaintiffs must plead enough facts to give defendants notice of the time, place, and nature of the alleged fraud together with an explanation of the statement and why it was false or misleading. See id. at 1107.

Fraud pleading must be sufficient to give defendants notice of the circumstances surrounding an allegedly fraudulent statement. See In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1547 (9th Cir. 1994) (superseded by statute on other grounds as stated in Ronconi v. Larkin, 253 F.3d 423, 429 n.6 (9th Cir. 2001)). Those circumstances must "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" Vess, 317 F.3d at 1106 (quoting Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001)) (internal quotation marks omitted). "The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993).

### III. DISCUSSION

#### A. Article III Standing

Defendants argue that the SAC does not sufficiently allege injury in fact that could confer Article III standing. (*Defs.' Mot.* [Doc. 22-1] 10–12.)

The SAC alleges that Plaintiff is a supplier of health products and that Defendants deceptively labeled an inferior product purchased from Avicenna, Plaintiff's competitor. According to Defendants, any damages suffered by Plaintiff are speculative because Plaintiff does not compete with Defendants, and no Defendants have any obligation to buy from Plaintiff. (*Id.*) This overlooks allegations in the SAC that Defendants' false advertisements decreased demand for Plaintiffs' products, thereby causing economic harm. (*SAC* [Doc. 21] ¶ 32 ("Passing off chicken collagen derived from chicken whole frame carcasses puts the Retail Defendants at a distinct advantage in the marketplace, because they can purchase the raw ingredients at a much lower cost and in turn have

5

dramatically higher profit margins. The Retail Defendants' ability to pass off inferior products decreases the demand for [Plaintiff's product], and impacts Plaintiff's commercial interests . . . .").) Whether Plaintiff and Defendants are direct competitors is immaterial to the Article III injury in fact analysis.

The motion to dismiss for lack of Article III standing will be denied.

### B. "Prudential Standing" and the Lanham Act

Defendants also argue that the SAC does not sufficiently allege statutory standing pursuant to the Lanham Act. (*Defs.' Mot.* [Doc. 22-1] 10–12.) They appear to conflate this issue with Article III standing, which is discussed *supra*.

In addition to the doctrine of Article III standing, the Supreme Court has recognized the concept of "a 'prudential' branch of standing, a doctrine not derived from Article III and 'not exhaustively defined' but encompassing . . . at least three broad principles: 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.' " Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 126 (2014) (quoting Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 12 (2004) (internal quotations omitted)). This case implicates the third principle—whether Plaintiff's interests are in the zone protected by the statute under which it brings suit.

The question, then, is whether Plaintiff falls within "the class of plaintiffs whom Congress has authorized to sue under § 1125(a)." Lexmark Int'l, 572 U.S. at 128. "[A] plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." Id. at 133. "That showing is generally not made when the deception produces injuries to a fellow commercial actor that in turn affect the plaintiff." Id. at 133–34. However, it is

6

not necessary that Plaintiff and Defendants be direct competitors for the harm to be direct and actionable. See id. at 139–40.

Defendants focus chiefly on the fact that Plaintiff and Defendants are not direct competitors. (*Defs.' Mot.* [Doc. 22-1] 10–12.) However, as the Supreme Court explained in detail in Lexmark Int'l, direct competition is not a prerequisite for direct commercial harm to a fellow commercial actor caused by a deception. 572 U.S. at 133–34. Defendants are essentially taking the position that a retailer selling a cheap knockoff product and deceptively labeling it as a more expensive one could not cause direct economic harm to a supplier of the authentic item. This is irrational.

Defendants' motion to dismiss on this ground will be denied.

**C. Rule 9(b)**

Plaintiff's Lanham Act claims are grounded in fraud and must meet Rule 9(b)'s pleading requirements. (*SAC* [Doc. 21] ¶¶ 33, 41.) See 15 U.S.C. § 1125(a); Fed. R. Civ. P. 9(b); Bobbleheads.com, LLC v. Wright Brothers, Inc., 259 F. Supp. 3d 1087, 1095 (2017) (Sammartino, J.); Vess, 317 F.3d at 1106.

The SAC's introductory paragraphs allege misrepresentation with particularity as to Defendants' Collagen2 Joint Complex product. (*SAC* [Doc. 21] ¶¶ 24–26; 26–29; 30.) These paragraphs state that all three Defendants are responsible for that mislabeled product. (*Id.* [Doc. 21] ¶ 26.) They identify three retail outlets in which the allegedly mislabeled product were sold, when they were sold, and they describe the nature of the deception in some detail. (*SAC* [Doc. 21] ¶¶ 26–29; 30.) This is sufficient to comply with Rule 9(b).

The motion to dismiss for failure to comply with Rule 9(b) will be denied.

//
//
//
//

7

IV. **CONCLUSION AND ORDER**

For the foregoing reasons, Defendants' motion to dismiss is **DENIED**. [Doc. 22.]

**IT IS SO ORDERED.**

Dated: January 17, 2019

_____
Hon. Thomas J. Whelan
United States District Judge