UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CERTIFIED NUTRACEUTICALS, INC., a California Corporation,<br><br>                    Plaintiff,<br><br>v.<br><br>THE CLOROX COMPANY, a Delaware Corporation, et al.,<br><br>                    Defendants. | Case No.: 3:18-cv-00744-W-KSC<br><br>**ORDER DENYING MOTION FOR SANCTIONS; ORDER DENYING MOTION TO SEAL [Doc. Nos. 87, 88, 91]** |

On June 23, 2020, defendant Avicenna Nutraceutical, LLC ("Avicenna") moved the Court for an order imposing discovery sanctions against plaintiff Certified Nutraceuticals, Inc. ("plaintiff" or "Certified"). Doc. Nos. 88 (under seal), 91 (publicly available) (hereafter "Motion" or "Mot."). Specifically, Avicenna requests an order precluding Certified from offering any evidence that its Chicken Collagen Type II products are derived from 100% chicken sternum," or, alternatively, an order "re-opening discovery against Certified with respect to whether its product is derived from 100% chicken sternum and awarding Avicenna its attorneys' fees and costs incurred in conducting such discovery." Mot. at 2. Avicenna also seeks its attorneys' fees and costs incurred in bringing the Motion. *Id.* Avicenna also moved to file portions of the Motion and supporting exhibits under seal ("Motion to Seal"). Doc. No. 87. On July 6, 2020,

defendants Neocell Holding Company, Nutranext, and The Clorox Company (the "Clorox Defendants," and, together with Avicenna, "defendants") joined Avicenna's Motion (the "Joinder").[1]  Doc. No. 98.  The District Court referred Defendants' Motion to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and Civil Local Rule 72.1(b).  Plaintiff opposed the Motion on July 7, 2020 (the "Opposition" or "Opp.").  Doc. No. 99.  Per this Court's order, Avicenna did not file a reply, and the Court took the Motion under submission.  Doc. No. 92.  This Order follows.

For the reasons set forth below, the Court DENIES defendants' request for evidentiary sanctions; DENIES defendants' alternative request to re-open discovery; and DENIES defendants' request for costs and attorneys' fees incurred in bringing the motion.  The Court also DENIES Avicenna's Motion to Seal.

## I. BACKGROUND

Certified imports, sells, licenses and distributes ingredients for nutraceutical companies, among which are collagen products, and in particular a type of collagen ingredient known as Chicken Sternum Collagen Type II.  *See* Third Amended Complaint (the "Complaint"), Doc. No. 50, ¶14.  According to plaintiff, Chicken Sternum Collagen II has unique properties that lend themselves to therapeutic and nutritional uses.  *Id.*, ¶16.  Plaintiff alleges that defendants deceptively market and falsely label products made from inferior-quality, lower-priced chicken carcasses as containing Chicken Sternum Collagen Type II, in violation of the Lanham Act.  *Id.*, ¶¶1, 2, 18-22; 30-40.

**A. The Court's Scheduling Order**

On November 26, 2019, the Court entered a Scheduling Order Regulating Discovery and Other Pre-Trial Proceedings, which, in pertinent part, provided:

/ /

---

[1] As the Clorox Defendants' Joinder "request[s] the same order and relief in their favor as that requested by Avicenna in the pending Motion," and is "based on the same legal and factual grounds set forth in that Motion," Doc. No. 98 at 2, the Court will treat the Motion herein as having been brought by all defendants.

All fact discovery shall be completed by all parties by **May 15, 2020**. "Completed" means that all discovery under Rules 30-36 of the Federal Rules of Civil Procedure, and discovery subpoenas under Rule 45, must be initiated a sufficient period of time in advance of the cut-off date, **so that it may be completed** by the cut-off date, taking into account the times for service, notice and response as set forth in the Federal Rules of Civil Procedure.  **Counsel shall promptly and in good faith meet and confer with regard to all discovery disputes in compliance with Local Rule 26.1(a).**  The Court expects counsel to make every effort to resolve all disputes without court intervention through the meet and confer process.   If the parties reach an impasse on any discovery issue, counsel shall file an appropriate motion within the time limit and procedures outlined in the undersigned magistrate judge's chambers rules.  **A failure to comply in this regard will result in a waiver of a party's discovery issue.  Absent an order of the court, no stipulation continuing or altering this requirement will be recognized by the court.**

Doc. No. 61 at 2 (emphasis in original).  On April 24, 2020, the Court extended the fact discovery cutoff to June 15, 2020.  Doc. No. 81 at 2.

### B. Avicenna's First Set of Document Requests to Certified

On November 15, 2019, Avicenna served its first set of requests for production ("RFPs" or "document requests") on plaintiff, to which plaintiff responded on December 23, 2019.  *See* Doc. No. 91-3 at 2 (April 16, 2020 letter from Avicenna's counsel to Certified's counsel). Although defendants' Motion for discovery sanctions is based on plaintiff's alleged failure to respond to other, later-served discovery requests, the Court finds Avicenna's earlier discovery relevant to the determination of the parties' dispute. Specifically, Avicenna's first set of document requests to plaintiff included the following requests:

> **REQUEST FOR PRODUCTION NO. 19**:
> DOCUMENTS sufficient to show the manufacturing process for each of YOUR products that YOU contend compete with AVICENNA's products, including but not limited to the starting chicken material and each step of the manufacturing process.

/ /
/ /

**REQUEST FOR PRODUCTION NO. 20:**

All DOCUMENTS that identify or state the CONTENTS for each of YOUR collagen products.

**REQUEST FOR PRODUCTION NO. 36:**

All DOCUMENTS RELATING TO YOUR procedure for formulating each of YOUR collagen products.

**REQUEST FOR PRODUCTION NO. 39:**

Any and all DOCUMENTS RELATING TO studies testing the contents, safety or efficacy of any of YOUR collagen products, including formal or informal analysis, investigation, surveys, focus groups, consumer research, or other information or reports.

*Id.* at 2-3. Defendants did not move to compel responses to this discovery within the 30-day timeframe provided by the Court's Chambers' Rules or by the deadline set when the Court granted the parties' requested for an extension of that timeframe. *See* Chambers' Rules and Civil Pretrial Procedures for the Honorable Karen S. Crawford, §V.III.; Doc. No. 83. The Court therefore assumes plaintiff's responses were satisfactory.

**C. Second Set of Document Requests to Certified**

The present dispute relates to defendants' second set of document requests to Certified. On March 24, 2020, Avicenna served its second set of document requests on plaintiff. Doc. No. 91-2 at 9. Included were the following document, at issue here:

**REQUEST FOR PRODUCTION NO. 52**:

All DOCUMENTS RELATING TO all of YOUR purchases of chicken sternum from TYSON FOODS or any other PERSON from 2011 to present.

**REQUEST FOR PRODUCTION NO. 54**:

DOCUMENTS sufficient to show CERTIFIED's first purchase of 100 percent chicken sternum collagen.

//
//

**REQUEST FOR PRODUCTION NO. 55**:

DOCUMENTS sufficient to show CERTIFIED's first use of 100 percent chicken sternum collagen.

*Id.* at 7-8; *see also* Mot. at 10. Plaintiff served its responses on April 24, 2020. Doc. No. 91-7 at 8. In response to RFPs No. 54 and 55, plaintiff objected that the discovery was neither relevant nor proportional to the needs of the case, but nevertheless agreed to produce whatever responsive, nonprivileged documents could be located after a diligent search. *Id.* at 6-7. With respect to RFP No. 52, however, plaintiff agreed to produce only a "reasonable sample" of responsive documents, objecting that to produce *all* responsive documents related to a "commercial relationship" that lasted "nearly a decade" would be disproportional and burdensome. *Id.* at 4.

On May 15, 2020, defendants sought an extension of time to bring discovery disputes related to plaintiffs' responses to Avicenna's first and second sets of document requests to the Court. Doc. No. 83 at ¶¶1, 4, 6, 7, 9. On May 18, 2020, the Court granted the parties' request, allowing them until May 29, 2020 to contact the Court regarding these and other discovery disputes. Doc. No. 84.

Following the Court's May 18, 2020 Order, the parties continued to confer and apparently agreed that plaintiff's offer to produce a "reasonable sample" of documents responsive to RFP No. 52 would be accepted so long as it included "documents from each year from 2011 to the present." Doc. No. 99-1 at 102 (May 28, 2020 email from Avicenna's counsel to Certified's counsel). On May 29, 2020 – the day after this agreement was reached – the Court held a discovery conference with the parties at their request, during which Avicenna's counsel requested that plaintiff be ordered to provide documents responsive to RFPs No. 52, 54 and 55 by June 1, 2020 so that counsel could make use of them at a June 8, 2020 deposition of Certified's Rule 30(b)(6) designee. Mot. at 12; *see also* Declaration of Seth M. Jessee In Support of Defendant Avicenna Nutraceutical, LLC's Motion for Discovery Sanctions ("Jessee Decl."), Doc. No. 91-1, ¶11. Avicenna did not identify any other disputes related to plaintiff's discovery

responses during the discovery conference or otherwise raise them to the Court by the May 29, 2020 deadline.[2] The Court issued an order later that day, ordering plaintiff to produce all documents responsive to RFPs No. 52, 54, and 55 by the close of business on June 1, 2020, as defendants had requested. Doc. No. 85.

### D. The Dispute and the Parties' Positions

As noted, the instant motion arises out of plaintiff's assertedly deficient responses to Avicenna's March 24, 2020 document requests. Specifically, defendants contend that, in violation of this Court's May 29, 2020 Order, "as of June 1, 2020, Certified did not produce a single document establishing that its Chicken Collagen Type II is derived from 100% chicken sternum." Mot. at 7. Defendants further contend that such documents "were required to be produced no later than June 1, 2020," and that plaintiff's failure to produce the documents as ordered warrants the imposition of evidentiary sanctions, "preclud[ing] Certified from presenting evidence that its Chicken Collagen Type II is derived from 100% chicken sternum." Mot. at 7, 8. As an alternative, defendants request that the Court "re-open discovery against Certified on the issue of whether Certified's product is derived from 100% chicken sternum, including, but not limited to, (i) ordering Certified to produce within seven days any additional documents in its possession, custody, or control related to its claim that its product is derived from 100% chicken sternum; (ii) ordering Certified to produce [Certified's Rule 30(b)(6) designee] for continued examination; and (iii) permitting Avicenna to subpoena third-parties concerning whether Certified sells a product derived from 100% chicken sternum." Mot. 9, 20-21. This, defendants say, is the "[m]inimum" relief to which they are entitled because "Certified's dilatory behavior prejudiced" them and "necessitat[ed] further discovery at a later date." Mot. at 20, 21. Defendants claim that the requested sanctions

//

---

[2] The "remaining discovery disputes" referred to in the Court's May 29, 2020 Order related to plaintiff's discovery requests to defendants.

are appropriate and may be awarded pursuant to Federal Rules of Civil Procedure 30(d)(2), 37(b)(2)(A), 37(c), or the Court's inherent powers.  Mot. at 18.

Plaintiff disclaims noncompliance with the Court's May 29, 2020 Order.  Opp. at 2.  Plaintiff's counsel declares that in accordance with the Order, Certified produced 271 documents to defendants by June 1, 2020, and submits evidence of Avicenna's agreement to accept a representative sample of documents responsive to RFP No. 52.  *See* Doc. No. 99-1 at 102; *see also* Opp. at 6, 12.  Plaintiff argues that since defendants have not shown plaintiff violated any the Court's May 29, 2020 Order (or any other order), no sanctions should be imposed, and particularly not the potentially case-terminating sanction of evidence preclusion.  Opp. at 12-13.  Plaintiff further contends that neither Rule 30(d)(2) nor Rule 37(c) provide a basis for the imposition of sanctions.  Opp. at 14-15.

## II.  LEGAL STANDARDS

### A. Sanctions Under the Federal Rules

The Ninth Circuit allows District Courts wide discretion to fashion appropriate sanctions for discovery violations under the Federal Rules of Civil Procedure.  *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F. 3d 1101, 1106 (9th Cir. 2001); *see also Lew v. Kona Hosp.*, 754 F.2d 1420, 1425 (9th Cir. 1985) ("The district court has great latitude in imposing sanctions under [Rule] 37.").  Nevertheless, that discretion is tempered by the dual requirements that any sanctions imposed must be both "just" and "specifically related to the particular 'claim' which was at issue in the order to provide discovery."  *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001) (*quoting Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)); *accord Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1056 (9th Cir. 1998) ("the central factor in evaluating the district court['s sanctions] order is justice").

#### 1. Rule 37

"The very purpose of Rule 37 is to insure compliance with discovery orders."  *Grimes v. City & Cty. of San Francisco*, 951 F.2d 236, 240-41 (9th Cir. 1991).  Rule 37(b) empowers the Court to impose sanctions against any party "who fails to obey an

order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). Among the sanctions available to the Court are:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). Furthermore, "[i]nstead of or in addition to" these enumerated sanctions, the Court "must" order the party who failed to provide discovery, its counsel, or both "to pay the reasonable expenses, including attorney's fees, caused by the failure" except where the failure was "substantially justified" or an award of expenses would be "unjust." Fed. R. Civ. P. 37(b)(2)(C). Of the sanctions available under Rule 37(b), the "harshest" are dismissal and evidentiary preclusion. *Hawkins v. Kroger Co.*, No. 3:15-cv-02320-JM-AHG, 2020 WL 1952832, at *25 (S.D. Cal. Apr. 23, 2020).

Rule 37 also authorizes the Court to impose sanctions where a party has failed to make the disclosures required by Rule 26(a) or (e).[3] Fed. R. Civ. P. 37(c)(1).

---

[3] As relates to the instant Motion, Rule 26(a) requires that:

> (A) *In general.* Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:
> * * *
> (ii) a copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses ….

Fed. R. Civ. P. 26(a)(1)(A)(ii).

Specifically, Rule 37(c) "gives teeth" to Rule 26's disclosure requirements "by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly*, 259 F. 3d at 1106.  In addition to or in place of such evidence preclusion, Rule 37(c) also authorizes the Court to impose any of the sanctions enumerated in Rule 37(b)(2)(A)(i)-(vi), as well to require the delinquent party to pay the other party's reasonable expenses.  Fed. R. Civ. P. 37(c)(1)(A) and (C).

### 2. Rule 30

Rule 30, titled "Depositions by Oral Examination," provides that "[t]he court may impose an appropriate sanction … on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2).  "Appropriate sanction[s]" include an award of "reasonable expenses and attorney's fees." *Id.*

## B. The Court's Inherent Authority to Impose Sanctions

A district court may also punish "discovery violations" pursuant to its inherent power. *Jackson v. Microsoft Corp.*, 211 F.R.D. 423, 430 (W.D. Wash. 2002).  This includes the imposition of evidentiary sanctions. *See In re Napster*, *Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006).  The Court's is also empowered to "award sanctions in the form of attorneys' fees against a party or counsel." *Leon v. IDX*, 464 F.3d 951, 961 (9th Cir. 2006) (citation omitted).  However, "[b]ecause of their very potency," the Court's "inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO*, *Inc.*, 501 U.S. 32, 44 (1991).  The Court may not impose sanctions pursuant to its inherent power unless it finds that a party has acted in bad faith.  *See Sell v. Country Life Ins. Co.*, 189 F. Supp. 3d 925, 929 (D. Ariz. 2016) (collecting cases). Any award of monetary sanctions must also be "reasonable" under the circumstances. *Leon*, 464 F.3d at 961.

//
//
//
//

## III. DISCUSSION

### A. **The Motion Is Untimely**

Defendants complain that plaintiff produced the majority of its documents in this matter on the last day of fact discovery.[4] Mot. at 14, 17. The Court set a deadline for the parties to "complete" their document productions (and all other fact discovery) by June 15, 2020, *see* Doc. No. 81 at 2, and cannot agree that documents produced on or before this date were "late" or "improper." Mot. at 8, 13. Nevertheless, if defendants felt "sandbagged" by the volume of plaintiff's last-day production of "key documents" (*id.* at 18), they had the option of petitioning the Court for additional time to address the newly-produced documents. Mot. at 8, 18. Instead, defendants moved for potentially case-terminating sanctions against plaintiff on the basis of plaintiff's purported failure to produce documents responsive to RFPs No. 52, 54 and 55. *See Glover v. CoreCivic of Tenn., LLC*, No. 18cv2330 JM(NLS), 2020 WL 673525, at *2 (S.D. Cal. Feb. 11, 2020) (refusing to impose terminating sanctions for discovery violations and noting that the movant's "all or nothing approach is extreme and ignores other less drastic measures").

In moving for sanctions, defendants represent that they served RFPs No. 52, 54 and 55 on March 24, 2020 to "ensure Certified would produce documents to substantiate its claim that its Chicken Collagen Type II is derived from 100% chicken sternum[.]" Mot. at 10. Defendants also represent that "Avicenna sent a meet and confer letter to Certified requesting that Certified produce all responsive documents showing that its Chicken Collagen Type II is derived from 100% chicken sternum." Jessee Decl., ¶4. Defendants assert that this meet and confer letter made "the obvious point" that those documents "concern the crux of Certified's asserted injury in this action." Mot. at 10. A copy of defendants' meet and confer letter, titled "Plaintiff's Deficient Document Production," is attached to defendants' Motion. Doc. No. 91-3. In the letter, defendants

---

[4] Defendants' assertion that plaintiff produced "84% of its total production" between June 14 and June 15 is based on a page count of plaintiff's document production. Mot. at 17.

do complain that plaintiff had failed to produce "documents showing that its products have at all relevant times been comprised of pure chicken sternum," which defendants considered necessary for plaintiff to establish both standing and injury. Doc. No. 91-3 at 3. The problem for defendants is that their meet and confer letter was sent on April 16, 2020 – eight days before plaintiff served its responses to RFPs No. 52, 54 and 55. Mot. at 5; *see also* Doc. No. 91-3 (April 16, 2020 letter); Doc. No. 91-7 at 8 (plaintiff's RFP responses dated April 24, 2020). Thus, the letter itself reveals that Avicenna's complaint that "Certified has not produced any documents showing that its products have at all relevant times been comprised of pure chicken sternum" arises out of Certified's purportedly deficient responses to RFPs No. 19, 20, 36 and 39 – ***not*** to RFPs No. 52, 54 and 55. *Id.* at 2-3.

The assertion that as of June 1, 2020, Certified had "failed to produce any documents showing that its product is derived from 100% chicken sternum" is the entire predicate of defendants' Motion. *See*, *e.g.*, Mot. at 7, 8, 12, 15, 16, 18, 19, 20 (defendants' various references to plaintiff's alleged failure to produce documents establishing the purity of Certified's products). Yet, RFPs No. 52, 54 and 55 plainly do not call for "document[s] showing that [Certified's] Chicken Collagen Type II ***was and is*** derived from 100% chicken sternum." Mot. at 13 (emphasis added). Instead, those RFPs required plaintiff to produce documents showing Certified's "***first use***" or "***first purchase***" of pure chicken sternum, as well as purchase-related documents for the period 2011 to the present. Doc. No. 91-2 at 7-8 (emphasis added). Defendants' position that documents produced by Certified were not "responsive" to Requests No. 52, 54 and 55 because "none showed that Certified's Chicken Collagen Type II was ever derived from 100% chicken sternum" (Mot. at 12) cannot be reconciled with a plain reading of their document requests. For the same reason, defendants' theory that in ordering plaintiff to respond to RFPs No. 52, 54 and 55 by June 1, 2020, the Court thereby "ordered [plaintiff] to produce documents showing its use of 100% chicken sternum" (Mot. at 19) is unsupportable.

However, documents demonstrating the purity of Certified's chicken collagen products are comfortably within the scope of Avicenna's first set of document requests (specifically, RFPs No. 19, 20, 36 and 39), as is apparent both from the face of those RFPs and the parties' correspondence. *See* Doc. No. 91-3 at 3 (describing documents responsive to RFPs No. 19, 20, 36 and 39 as documents showing that Certified's products were "comprised of pure chicken sternum"). Plaintiff responded to RFPs No. 19, 20, 36 and 39 on December 23, 2019. *Id.* at 2 (referring to "the responses and document production that Certified … served on December 23, 2019 in response to the Requests for Production (Set One) propounded by Defendant Avicenna … on November 15, 2019"). Pursuant to this Court's Chambers' Rules, defendants had 30 days thereafter to bring a motion to compel further responses. *See* Chambers' Rules, § VIII.B.2. They did not do so. Months later, on May 15, 2020, Defendants sought an extension of time to raise discovery disputes, including those related to plaintiffs' responses to Avicenna's first set of document requests.[5] *See* Doc. No. 83. The Court granted the request and allowed the parties "until May 29, 2020 to bring any outstanding disputes before the Court." Doc. No. 84 at 3-4. Yet, the only discovery dispute defendants raised with the Court by the May 29, 2020 deadline was that plaintiff had not produced documents responsive to RFPs No. 52, 54, and 55, for which the Court ordered the requested relief. Doc. No. 85. This history of events, taken together with the plain language of the RFPs and the extremely broad scope of defendants' request to reopen discovery "on the issue of whether Certified's product is derived from 100% chicken sternum" (Mot. at 8), leads the Court to

//

---

[5] In the motion for an extension of time, Avicenna denied that the deadline to move to compel further responses to its first set of discovery requests had expired because plaintiff had agreed to provide responsive documents but had not yet done so. Doc. No. 83, at ¶¶1, 12. The Court's Chambers' Rules provide that "ongoing meet and confer efforts, rolling document productions or supplemental responses do not extend" the 30-day deadline for bringing a discovery dispute to the Court. Chambers' Rules, §VIII.B. The Scheduling Order issued by the Court makes explicit reference to these rules and warns parties that the failure to timely bring discovery disputes to the Court will result in waiver. *See* Doc. No. 61 at 2.

conclude that defendants' Motion constitutes an attempt to revive a stale discovery dispute.

Defendants' effort to resurrect their lapsed discovery dispute by asserting that RFPs No. 52, 54 and 55 require the production of documents demonstrating that Certified's "Chicken Collagen Type II was and is derived from 100% chicken sternum" (Mot. at 13) is not well taken. The Court very recently rejected a similar attempt by plaintiff to "circumvent" the Court's discovery deadlines. Doc. No. 101 at 7 (*quoting Jensen v. BMW of North America, LLC*, No. 18-cv-103-WQH-NLS, 2018 WL 5389628, at *2 (S.D. Cal. Oct. 29, 2018)). Defendants' Motion will suffer the same fate. This Court will not reward any party for their lack of diligence, nor will it signal "to these parties, or any parties, that they will be allowed to do an end run" around the discovery deadlines clearly set out in its Chambers' Rules and other orders. *ViaSat, Inc. v. Space Systems/Loral Inc.*, No. 12–CV–0260–H (WVG), 2013 WL 3467413, at *6 (S.D. Cal. July 10, 2013). Accordingly, the Court DENIES the Motion as untimely.

### B. Sanctions Are Not Warranted

Having found the Motion untimely, the Court need not go further. Nevertheless, the Court further finds that defendants have not established either a legal or factual basis to either preclude plaintiff from "presenting evidence that its Chicken Collagen Type II is derived from 100% chicken sternum," or to re-open discovery. Mot. at 8.

A necessary "predicate" for imposing sanctions pursuant to Rule 37(b)(2) "is that there has been a violation of a court order." *Abu-Loghod v. Calis*, No. CV13-02792 DMG (RZx), 2014 WL 12589357, at *1 (C.D. Cal. May 23, 2014). Here, the Court finds that defendants have failed to show that plaintiff violated the Court's May 29, 2020 Order requiring production of documents responsive to RFPs No. 52, 54 and 55. As detailed above, RFPs No. 54 and 55 seek documents relating to plaintiff's "first" use or purchase of 100% chicken sternum. Nowhere in the Motion do defendants assert that documents plaintiff produced on or before June 1, 2020, were not responsive as to these issues. Defendants' Motion is also silent as to whether plaintiff sufficiently responded to RFP

No. 52, which by its terms and as agreed by the parties, required a sample of purchase-related documents for each year in the period 2011 through the present.

Instead, defendants persist in skewing the discovery at issue, stating that "[p]recluding Certified from introducing evidence that its Chicken Collagen Type II is derived from 100% chicken sternum is appropriate" because "Certified was Ordered to produce documents showing its use of 100% chicken sternum by June 1, 2020" but did not.  Mot. at 18, 19.  For the reasons set forth above, that is simply incorrect.  Furthermore, plaintiff has provided his counsel's sworn declaration that the documents produced on June 1, 2020 "included hundreds of invoices shipments [sic] of raw materials used in producing the chicken collagen product" dating back to 2010.  *See* Declaration of David A. Sergenian in Support of Plaintiff Certified Nutraceuticals, Inc.'s Opposition to Defendant Avicenna Nutraceutical, LLC's Motion for Discovery Sanctions, Doc. No. 99-1, ¶22.  Plaintiff also represents that "these documents were sufficient to show Certified['s] … first use and purchase of pure chicken sternum" because Certified "was founded in 2011."  Opp. at 5; *see also id.* at 7.  The record before the Court does not support a finding that plaintiff "fail[ed] to obey an order to provide or permit discovery."  Fed. R. Civ. P. 37(b)(2)(A).  Accordingly, the Court finds that sanctions under Rule 37(b)(2) are not warranted.

Defendants also argue that the documents it now seeks "should have been produced with [Certified's] initial disclosures" under Rule 26(a).  Mot. at 8.  The Court is not convinced that documents showing the purity of Certified's product are the "foundation of [plaintiff's] *claims*" as opposed to defendants' *defenses* that plaintiff lacks of standing, did not suffer any injury or has unclean hands.  *See* Mot. at 7.  Regardless, as plaintiff correctly notes (*see* Opp. at 14), Rule 26(a) provides that a disclosing party may *either* disclose "a copy" of the documents upon which it will rely to prove its claims or defenses, *or* it may "descri[be]" those documents by category and location.  Fed. R. Civ. P. 26(a)(ii).  Defendants have not provided the Court with any evidence that plaintiff's Rule 26(a) disclosures did not comport with this alternative method of disclosure.

Because the record also does not support a finding that plaintiff "fail[ed] to provide information or identify a witness as required by Rule 26(a)" by not producing documents concurrently with its disclosures, the Court finds that sanctions under Rule 37(c) are not warranted.[6]

Defendants also claim that plaintiff's alleged failure to produce the requested documents by June 1, 2020, impeded their ability to examine Certified's Rule 30(b)(6) designee at his June 8, 2020 deposition. Mot. at 18, 19. Apart from asserting that "Certified waited until after Avicenna took the [June 8] deposition" to produce documents (Mot. at 19), defendants have not made any argument that plaintiff or his counsel "impeded" the examination of the witness. Fed. R. Civ. P. 30(d). And, defendants do not cite any authority for imposing sanctions on plaintiff pursuant to Rule 30, which governs oral depositions, for an alleged failure to produce documents. *See United States v. Real Prop. and Improvements Located at 1840 Embarcadero*, *Oakland*, *Ca.*, 932 F. Supp. 2d 1064, 1069 (N.D. Cal. 2013) ("[T]he Federal Rules are to be given their plain meaning.") (*citing Bus. Guides v. Chromatic Comms. Enter.*, *Inc.*, 498 U.S. 533, 540-41 (1991)). Furthermore, the Court sees no need to resort to Rule 30 as a basis for sanctions when Rule 37 already provides myriad remedies for a party's failure to produce documents. *See United States v. $133,420.00 in United States Currency*, 672 F.3d 629, 643 (9th Cir. 2012) ("It is a 'cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant.'") (citation omitted). Accordingly, the Court declines to impose sanctions under Rule 30(d).

Finally, as noted above, the Court may not impose sanctions pursuant to its inherent power absent an express finding of bad faith. *See Sell*, 189 F.Supp. 3d at 929 (collecting cases). Given the Court's finding that plaintiff did not violate its May 29,

---

[6] This ruling is without prejudice to defendants' ability at trial or on a motion *in limine* to move for the exclusion of specific documents or witnesses pursuant to Rule 37(c), if there is a good faith basis to do so. The Court merely declines to find that plaintiff's Rule 26(a) disclosures were inadequate on the bare fact that plaintiff did not produce documents with them.

2020 Order or otherwise engage in discovery abuses, there is no predicate conduct on which to base such a finding. *See Chambers*, 501 U.S. at 44 (noting court's "discretion" to sanction "conduct which abuses the judicial process"). Moreover, the Court finds defendants' accusations of plaintiff's "lack of good faith in complying with the Court's Order" overstated.[7] Mot. at 17. For example, defendants complain that plaintiff produced "over 7,500 pages of documents" after the deposition.[8] *Id.* Yet, before the Court are just 4 documents (consisting of 25 pages) produced between June 11 and June 15. *See* Jessee Decl., ¶¶14, 17, 18, 19. One of them was created on June 9, 2020 and could not have been produced before the deposition. Doc. No. 88-5. The other three are emails exchanged in 2018, 2019 and 2020 between Certified and one of its suppliers and thus do not evidence Certified's first use or first purchase of pure chicken sternum. Doc. Nos. 88-6, 88-7, 88-8. Defendants also complain that Certified failed to produce documents related to its purchases of chicken sternum from Tyson Foods, ignoring Certified's unambiguous testimony that it never purchased any chicken sternum from Tyson. *See* Mot. at 12; Opp. at 9; Doc. No. 9901 at 114-115. Defendants also submitted three documents that purportedly show Certified did not use 100% chicken sternum. *See* Doc. No. 88-2; 88-3; 88-4. Whether or not defendants' characterization is accurate (or whether a jury would agree that it is), they admittedly had those documents well in

---

[7] Defendants' Motion is also riddled with reminders that Certified's principal, Mr. Alkayali, has been found by other courts to have committed perjury and thinly-veiled suggestions that he has done so again here. *See* Mot. at 6 (stating that Mr. Alkayali "has spent the past decade perjuring himself" and referring to prior findings of perjury), 11 (calling Certified's testimony "incredulous"); 12 (stating there are "no documents or communications" supporting Certified's testimony); 17 n.3 (indicating that Certified's principal lacks credibility and referring, again, to prior instances of perjury); 19 (accusing Certified of having manufactured evidence); 21 (describing documents produced by Certified as "highly suspect"). Notwithstanding Mr. Alkayali's prior conduct before other courts, this Court "does not take lightly [defendants'] accusations of perjury," particularly when they lack "evidentiary or legal support." *Arevalo v. Hyatt Corp.*, No. CV 12–7054 JGB (VBKx), 2013 WL 2042555, at *6 n.3 (C.D. Cal. May 13, 2013). Counsel are advised to be more circumspect in making such accusations, and to review Civil Local Rule 2.1 and Section I. of this Court's Chambers' Rules.

[8] The parties do not state how many documents plaintiff produced.

advance of Certified's June 8, 2020 deposition. Jessee Decl., ¶¶5-7. Defendants' submissions do not demonstrate that plaintiff "delay[ed] or disrupt[ed] the litigation or hamper[ed] the enforcement of a court order." *Leon*, 464 F.3d at 961 (defining "bad faith") (citation omitted). "The bad faith requirement sets a 'high threshold,'" and the burden of meeting it is on defendants as the moving party. *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 285 (N.D. Cal. 2015). Because defendants have failed to show that plaintiff violated the Court's May 29, 2020 Order, or otherwise acted in bad faith, the Court declines impose sanctions pursuant to its inherent power to do so.

In sum, defendants have not established a basis under the Federal Rules or the Court's inherent power to re-open discovery, nor for the imposition of preclusive sanctions which in this case would be "tantamount to dismissal." *Alexis v. Rogers*, No. 15cv691-CAB (BLM), 2016 WL 7325415, at *3 (S.D. Cal. Dec. 16, 2016). The Court therefore DENIES defendants' Motion on that independent and alternative basis.

## IV. MOTION TO SEAL

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (*citing Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). "'The presumption of access is 'based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice.'" *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (*quoting United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). The party requesting that documents be sealed bears the burden of overcoming the strong presumption of access. *Foltz*, 331 F.3d at 1135. Where the documents to be sealed are attached to a non-dispositive discovery motion, the party requesting sealing must make a "'particularized showing'" of "'good

cause.'" *Kamakana*, 447 F.3d at 1180 (*quoting Foltz*, 331 F.3d at 1137).  "Good cause exists where the party seeking protection shows that specific prejudice or harm will result" if the request to seal is denied.  *Anderson v. Marsh*, 312 F.R.D. 584, 594 (E.D. Cal. 2015).

Avicenna moved to seal seven exhibits to the Motion in their entirety on the basis that those documents had been "designated as CONFIDENTIAL" pursuant to the blanket protective order in place in the litigation.[9]  Doc. No. 87 at 2-3.  For the same reason, Avicenna also moved to seal the Motion itself to the extent it quotes from or otherwise reveals the contents of the confidential exhibits.  *Id.* at 3.

In this Circuit, a party's designation of a document as confidential pursuant to a blanket protective order does not suffice to establish good cause.  *See Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (noting that blanket protective orders are "by nature overinclusive" and do not require a "'good cause' showing under [Rule] 26"); *see also Small v. Univ. Med. Ctr. of S. Nevada*, No. 2:13–cv–00298–APG–PAL, 2015 WL 1281549, at *3 (D. Nev. Mar. 20, 2015) (*citing Kamakana*, 447 F.3d at 1183) (noting that "[b]lanket protective orders are entered to facilitate the exchange of discovery documents" and do not make any "findings that a particular document is confidential or that a document's disclosure would cause harm.").  The fact that plaintiffs designated documents and testimony confidential is not, "[s]tanding alone," sufficient to establish good cause for sealing them.  *Benchmark Young Adult School, Inc. v. Launchworks Life Svcs., LLC*, No. 12–cv–02953–BAS(BGS), 2015 WL 2062046, at *2 (S.D. Cal. Apr. 30, 2015).

Furthermore, even where good cause is shown, the Court should only seal the information that is necessary to protect the party from harm.  *See In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 425 (9th Cir. 2011) (in determining

---

[9] The Clorox Defendants did not join in the Motion to Seal.

whether to seal documents, "a court must still consider whether redacting portions of the discovery material will nevertheless allow disclosure"). Here, no party made any effort to "identify and redact only [the] information" that is purportedly confidential. *D'Agnese v. Novartis Pharms. Corp.*, No. 12–0749–PHX–JAT, 2012 WL 3744717, at *2 (D. Az. Aug. 27, 2012) (denying motion to seal). This Court will not endorse sealing entire documents where "'limited and clear'" redactions would suffice. *See Kamakana*, 447 F.3d at 1183.

Finally, it is axiomatic that the Court cannot justify sealing information that is "already publicly available." *Id.* at 1184; *see also Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-cv-04984-JST-MEJ, 2015 WL 1006534, at *6 (N.D. Cal. Mar. 6, 2015) (finding good cause for sealing did not exist where "the same or similar information … ha[d] been made available for public viewing"). Plaintiffs' Opposition to defendants' Motion was filed publicly. Attached to the Opposition is Exhibit A, which is similar in form or content to defendants' exhibits C, D and E. *Compare* Doc. No. 88-2, 88-3 and 88-4 (email chains titled "chicken sternum") *with* Doc. No. 99-1 at 12-56 (similar and more inclusive versions of same email chains) *and* Doc. No. 99-1 at 109 to 112 (Mr. Alkayali's deposition testimony describing contents of one of the email chains). Likewise, the publicly-filed declaration of Ahmad Alkayali describes the contents of defendants' Exhibit H. *Compare* Doc. 88-5 (photographs of chicken sternum) *with* Doc. No. 99-2, ¶3 ("I then requested and received new photographs of chicken sternum, which I forwarded to my counsel to be produced."). Thus, even if the parties had made a showing that disclosure of defendants' Exhibits C, D, E, and H (Doc. Nos. 88-2, 88-3, 88-4, 88-5) would result in harm, the documents or their contents have already been publicly disclosed and are thus not sealable.

Because the Court finds that neither party has made the requisite particularized showing of good cause for sealing, and further that Doc. Nos. 88-2, 88-3, 88-4, 88-5 are already publicly available in form or content, the Motion to Seal is DENIED.

/ /

# ORDER

For the reasons set forth above, the Court **ORDERS** as follows:

1. Defendants' Motion for Sanctions (Doc. No. 88) is **DENIED** in its entirety:
   - Defendants' request for evidentiary sanctions is **DENIED**;
   - Defendants' request to re-open discovery on the issue of whether Certified's products are made of pure chicken sternum is **DENIED**; and
   - Defendants' request for reimbursement of its fees and expenses incurred in bringing the Motion for Sanctions is **DENIED**.
2. Avicenna's Motion to Seal (Doc. No. 87) is also **DENIED**.

**IT IS SO ORDERED.**

Dated: August 7, 2020

Hon. Karen S. Crawford
United States Magistrate Judge