Christopher M. Young (Bar No. CA-163319)
christopher.young@dlapiper.com
Ashleigh L. Angeletti (Bar No. CA-265392)
ashleigh.angeletti@dlapiper.com
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, California 92101-4297
Tel:   619.699.2700
Fax:   619.699.2701

Attorneys for Defendants
The Clorox Company, Nutranext, and Neocell
Holding Company

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CERTIFIED NUTRACEUTICALS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE CLOROX COMPANY, a Delaware Corporation; NEOCELL CORPORATION, a California Corporation; NEOCELL HOLDING COMPANY, a Delaware Limited Liability Company; NUTRANEXT, a Delaware Corporation; AVICENNA NUTRACEUTICAL, LLC, a Georgia Limited Liability Company; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.  3:18-CV-00744-W-KSC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF THE CLOROX DEFENDANTS FOR SUMMARY JUDGMENT**<br><br>NO ORAL ARGUMENT PURSUANT TO LOCAL RULE<br><br>Date:      October 19, 2020<br>Ctrm:     3C<br>Judge:     Hon. Thomas J. Whelan |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   FACTUAL BACKGROUND ...................................................................... 2

    A.    The Parties and Product at Issue ......................................................... 2

         1.    The Clorox Defendants ............................................................. 2

         2.    Defendant Avicenna Nutraceutical LLC .................................. 2

         3.    Plaintiff Certified Nutraceuticals, Inc.................................... 3

    B.    Plaintiff's Claims ............................................................................. 3

    C.    Relevant Procedural History .............................................................. 3

III.  LEGAL STANDARD .............................................................................. 5

IV.  THE COURT SHOULD GRANT SUMMARY JUDGMENT IN THE CLOROX DEFENDANTS' FAVOR ON PLAINTIFF'S LANHAM ACT CLAIMS ........................................................................................... 6

    A.    Plaintiff Cannot Prove Its Claim for False Advertising...................... 6

         1.    The Collagen2 Joint Complex Product Labeling is Not False or Deceptive ............................................................... 7

         2.    Plaintiff Cannot Prove Materiality ......................................... 16

         3.    Plaintiff Has No Evidence that It Suffered Actual Injury Caused by Defendants' Conduct ............................................ 17

    B.    Plaintiff Cannot Prove Its Claim for False Designation of Origin .... 19

V.   THE DOCTRINE OF UNCLEAN HANDS BARS PLAINTIFF'S CLAIMS ................................................................................................ 20

VI.  CONCLUSION ....................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Air Turbine Tech., Inc. v. Atlas Copco AB,*
    410 F.3d 701 (Fed. Cir. 2005) ................................................................... 17

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ............................................................................... 5

*Appliance Recycling Centers of Am., Inc. v. JACO Envtl., Inc.,*
    378 F. App'x 652 (9th Cir. 2010) ............................................................... 16

*Caltex Plastics, Inc. v. Elkay Plastics Co.,*
    671 F. App'x 538 (9th Cir. 2016) ............................................................... 9

*Castrol, Inc. v. Pennzoil Co.,*
    987 F.2d 939 (3rd Cir. 1993) (Roth, J., dissenting) ........................................ 16

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ............................................................................ 5, 6

*In re Century 21–RE/MAX Real Estate Advert. Claims Litig.,*
    882 F. Supp. 915 (C.D. Cal. 1994) ............................................................. 7

*Certified Nutraceuticals Inc. v. Avicenna Nutraceutical, LLC,*
    Case No. 3:16-cv-02810-BEN, 2018 WL 3618243 (S.D. Cal. July
    30, 2018) .............................................................................. 1, 20, 21

*Daubert v. Merrell Dow Pharms., Inc.,*
    509 U.S. 579 (1993) ............................................................................. 12

*Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.,*
    890 F.2d 165 (9th Cir. 1989) ................................................................... 20

*Dreamwerks Prod. Grp., Inc. v. SKG Studio,*
    142 F.3d 1127 (9th Cir. 1998) .............................................................. 11, 20

*Elsayed Mukhtar v. Cal. State Univ., Hayward,*
    299 F.3d 1053 (9th Cir. 2002) (overruled on other grounds by *Estate
    of Barabin v. AstenJohnson, Inc,* 740 F.3d 457, 467 (2014)) ............................ 12

*Freecycle Network, Inc. v. Oey*,
    505 F.3d 898 (9th Cir. 2007) ......................................................................... 19

*GE v. Joiner*,
    522 U.S. 136 (1997) ..................................................................................... 12

*Harper House v. Thomas Nelson, Inc*.,
    889 F.2d 197 (9th Cir. 1989) ....................................................................... 17

*Japan Telecom, Inc. v. Japan Telecom Am. Inc*.,
    287 F.3d 866 (9th Cir. 2002) ...................................................................... 20

*Kwan Software Eng'g, Inc. v. Foray Technologies, LLC*,
    2014 WL 572290 (N.D. Cal. Feb. 11, 2014) .................................... 7, 13, 15

*Lindy Pen Co., Inc. v. Bic Pen Corp*.,
    982 F.2d 1400 (9th Cir. 1993), *abrogated on other grounds by*
    *SunEarth, Inc. v. Sun Earth Solar Power Co*., 839 F.3d 1179 (9th
    Cir. 2016) ..................................................................................................... 17

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) (Blackmun, J., dissenting) .................................... 18

*Maya v. Centex Corp*.,
    658 F.3d 1060 (9th Cir. 2011) ..................................................................... 18

*Merck Consumer Pharms. Co. v. Smithkline Beecham Corp*.,
    960 F.2d 294 (2d Cir. 1992) ................................................................. 10, 11

*Merck Eprova AG v. Brookstone Pharms*.,
    920 F. Supp. 2d 404 (S.D.N.Y.2013) ........................................................ 15

*Murray v. Cable Nat. Broad. Co*.,
    86 F.3d 858 (9th Cir. 1996) ................................................................. 11, 19

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck*
    *Consumer Pharms. Co.*,
    290 F.3d 578 (3rd Cir. 2002) ................................................................... 7, 8

*In re Oracle Corp. Securities Litigation*,
    627 F.3d 376 (9th Cir. 2010) .................................................................... 5, 6

*Out of the Box Enterprises, LLC v. El Paseo Jewelry Exch., Inc*.,
    2012 WL 12893690 (C.D. Cal. May 11, 2012) ...................................... 17

*Rice v. Fox Broadcasting Co.*,
   330 F.3d 1170 (9th Cir. 2003) .................................................................. 16

*U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*,
   971 F.2d 244 (9th Cir. 1992) .................................................................... 21

*Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*,
   902 F.2d 222 (3rd Cir. 1990) ................................................................... 17

*Sidense Corp. v. Kilopass Tech. Inc.*,
   2012 WL 3545289 (N.D. Cal. Aug. 16, 2012) ....................................... 16

*Skidmore as Trustee for Randy Craig Wolfe Trust v. Zeppelin*,
   952 F.3d 1051 (9th Cir. 2020) .................................................................. 16

*Skydive Ariz., Inc. v. Quattrocchi*,
   673 F.3d 1105 (9th Cir. 2012) .................................................................... 6

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) .............................................................. 7, 12

*Stambolian v. Novartis Pharms. Corp.*,
   2013 WL 6345566 (C.D. Cal. Dec. 6, 2013) .......................................... 12

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
   497 F.3d 144 (2d Cir. 2007) ...................................................................... 7

*United States v. Calderon–Segura*,
   512 F.3d 1104 (9th Cir. 2008) .................................................................. 12

*Walker & Zanger, Inc. v. Paragon Indus., Inc.*,
   549 F. Supp. 2d 1168 (N.D. Cal. 2007) .................................................. 11

*William H. Morris Co. v. Grp. W, Inc.*,
   66 F.3d 255 (9th Cir.), *supplemented sub nom. William H. Morris
   Co. v. Grp. W. Inc.*, 67 F.3d 310 (9th Cir. 1995) .................................. 11

**Statutes**

15 U.S.C. § 1125 ......................................................................................... 3

Lanham Act ...................................................................................... *passim*

**Other Authorities**

Amended Order Granting Defendant's Motion for Summary Judgment,
    Dkt. No. 47 ...................................................................................................21

Fed. R. Civ. P. 56(a) ..............................................................................................5

Fed. R. Evid. 201 ..................................................................................................21

Fed. R. Civ. P. 9(b) ................................................................................................4

Fed. R. Evid. 702 ..................................................................................................12

# I.   INTRODUCTION

The claims alleged by Plaintiff Certified Nutraceuticals, Inc. ("Plaintiff") in this matter represent a new front in Plaintiff's longstanding legal battle with its competitor, Defendant Avicenna Nutraceutical LLC ("Avicenna"), over the supply of raw collagen material for manufacturers of nutraceutical products. Avicenna has been the target of Plaintiff's ire since at least 2016, when Plaintiff sued Avicenna in a separate action alleging similar claims, which were ultimately adjudicated to be completely without merit.[1]

Defendants The Clorox Company ("Clorox"), Nutranext, and Neocell Holding Company (collectively, "the Clorox Defendants") became embroiled in this dispute when Plaintiff filed the instant lawsuit in 2018, alleging a "scheme" between Avicenna and the Clorox Defendants to falsely advertise the source of the chicken collagen used in a dietary supplement product manufactured and sold by Nutranext, a business unit of Clorox. Now, after over two years of litigation, it is absolutely clear that no such scheme exists, and that Plaintiff's claims are not supported by any competent evidence at all. Accordingly, the Clorox Defendants respectfully request that this Court grant summary judgment in their favor on Plaintiff's two claims under the Lanham Act.

Plaintiff's claims fail for at least three reasons. <u>First</u>, Plaintiff cannot demonstrate that the allegedly "false statement" on the label of the product at issue is false or misleading, or that any deception was material (or, for that matter, occurred at all). <u>Second</u>, Plaintiff has presented no evidence of damages proximately caused by the alleged false or misleading statements of the Clorox Defendants.

---

[1] In 2016, Plaintiff sued Avicenna in an action alleging similar claims. The court granted summary judgment for Avicenna because Plaintiff could not meet its burden to show actual damage, and under the doctrine of unclean hands. *See Certified Nutraceuticals Inc. v. Avicenna Nutraceutical, LLC*, 2018 WL 3618243 (S.D. Cal. July 30, 2018). The litigation history between Plaintiff and Avicenna is discussed at length in Avicenna's brief in support of its separate motion for summary judgment.

<u>Finally</u>, Plaintiff's unclean hands constitute a legal bar to any recovery by Plaintiff in this action.

## II.    FACTUAL BACKGROUND

### A.    The Parties and Product at Issue

#### 1.    The Clorox Defendants

The Clorox Company is a multi-national company with various strategic business units, one of which is Nutranext. (Young Decl., Ex. A, June 10, 2020 Deposition of Stanton Brown ("Brown Dep.") at 37:16.) Nutranext is a health and wellness company that manufactures and sells dietary supplement products, both to wholesalers and other business partners, and directly to consumers. (*Id.* at 31:9-12.) Nutranext manufactures and sells the product at issue in this case, which is known as Neocell Collagen2 Joint Complex ("Collagen2 Joint Complex"). The Collagen2 Joint Complex product is a collagen-based dietary supplement, provided to consumers in capsule form. (Dkt. No. 50, Third Amended Complaint ("TAC"), ¶¶ 22-23; Young Decl., Brown Dep. at 87:14-19.) Collagen2 Joint Complex contains sternal chicken collagen purchased from suppliers, including Defendant Avicenna. (Dkt. No. 50, TAC, ¶ 20; Young Decl., Brown Dep. at 129:21-24.)

Clorox acquired Nutranext effective April 2018. (Young Decl., Brown Dep. at 9:3-4) Prior to that acquisition, Nutranext had acquired a company known as Neocell Corporation, an entity that is now defunct. (Dkt. No. 52, The Clorox Defendants' Answer to Plaintiff's TAC ("Answer"), ¶¶ 9, 18.) Neocell Holding Company is an entity surviving from that 2017 acquisition, and now operates solely as a holding company for certain tax liabilities. (*Id.* at ¶ 18.)

The Clorox Defendants are not alleged to be, and indeed are not, direct competitors of Plaintiff. (Dkt. No. 50, TAC, ¶¶ 7-11.)

#### 2.    Defendant Avicenna Nutraceutical LLC

Avicenna is a supplier of chicken collagen ingredients to nutraceutical companies. (*Id.* at ¶ 19.) Plaintiff and Avicenna are direct competitors, both

1   involved in the manufacture, distribution and sale of raw ingredients for

2   nutraceutical companies, with a specialty in collagen ingredients. (*Id.* at ¶¶ 14, 19,

3   29.) As noted above, Avicenna sells its sternal chicken collagen to the Clorox

4   Defendants for use in the Collagen2 Joint Complex product. (*Id.* at ¶¶ 20, 22.)

### 3.   Plaintiff Certified Nutraceuticals, Inc.

6        Plaintiff is a California-based company that imports, sells, licenses, and

7   distributes raw materials and ingredients for nutraceutical companies. (*Id.* at ¶¶ 7,

8   14.) Plaintiff specializes in producing collagen ingredients for use in collagen

9   supplements. (*Id.* at ¶ 14.)

### B.   Plaintiff's Claims

11       Plaintiff asserts two claims for relief against the Clorox Defendants: (1) False

12  Advertising in Violation of Section 43(a)(1)(B) of the Lanham Act; and (2) False

13  Designation of Origin, 15 U.S.C. § 1125. (*Id.* at ¶¶ 30-40.) The basis for both claims

14  is Plaintiff's allegation that the defendants were engaged in a "scheme" to "pass off"

15  inferior chicken collagen in dietary supplements sold to consumers. (*Id.* at ¶¶ 1, 2.)

16  Specifically, Plaintiff claims that Collagen2 Joint Complex is labeled as containing

17  "Chicken Sternum Collagen Type II," which has a "distinct amino acid

18  composition[,]" but that the collagen in the product is not pure sternal chicken

19  collagen. (*Id.* at ¶¶ 19, 20.) Plaintiff claims the collagen is derived from inferior and

20  cheaper chicken "full frames," giving Defendants "an unfair competitive

21  advantage." (*Id.*) The Third Amended Complaint alleges that the Clorox

22  Defendants' false advertising began in February 2018. (*Id.* at ¶ 23.)

### C.   Relevant Procedural History

24       On April 17, 2018, Plaintiff filed this lawsuit against seven defendants. (Dkt.

25  No. 1, Complaint.) In addition to the Clorox Defendants and Avicenna—which

26  remain in this case—Plaintiff named as defendants Neocell Corporation and two

27  individual defendants, Sarah Quadri and Fatma Boukhari. (*Id.*) The original

28  /////

Complaint included state law claims of unfair competition and false advertising along with the two Lanham Act claims. (*Id.* at ¶¶ 31-49.)

On June 11, 2018, the Clorox Defendants filed a motion to dismiss the complaint and a motion to strike Plaintiff's claim for punitive damages. (Dkt. No. 9, 10.) Before those motions were decided, on July 2, 2018, Plaintiff filed an Amended Complaint, naming the same seven defendants. (Dkt. No. 12, Amended Complaint.) Though the substantive allegations remained essentially unchanged, Plaintiff abandoned its state law claims. (*Id.* at ¶¶ 32-43.)

On July 16, 2018, the Clorox Defendants moved to dismiss Plaintiff's amended Complaint on the ground that the allegations did not meet the heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure. (Dkt. No. 13.) The Clorox Defendants also moved to strike the amended complaint's prayer for punitive damages. (Dkt. No. 14.) On September 27, 2018, the Court granted the Clorox Defendants' motion to dismiss and motion to strike. (Dkt. No. 20.) Plaintiff was given leave to amend. (*Id.* at 8.)

On October 15, 2018, Plaintiff filed a Second Amended Complaint against the same seven defendants. (Dkt. No. 21.) The substantive allegations remained essentially unchanged, and Defendants again filed a motion to dismiss. (Dkt. No. 22.) That motion was denied and Defendants answered the Second Amended Complaint on January 31, 2019. (Dkt. Nos. 25, 26.)

On March 1, 2019, Plaintiff voluntarily dismissed Neocell Corporation as a defendant. (Dkt. No. 37.) On May 6, 2019, two individual defendants, Sarah Quadri and Fatma Boukhari, moved to dismiss the Second Amended Complaint on the grounds that Plaintiff had neglected to allege any false statement made by them. (Dkt. No. 42.) The Court agreed, dismissing the individual defendants on June 10, 2019. (Dkt. No. 49.)

/////

/////

4

On June 24, 2019, Plaintiff filed the now-operative Third Amended Complaint against the Clorox Company, Neocell Holding Company, Nutranext, and Avicenna Nutraceutical. (Dkt. No. 50, TAC.)

### III.   LEGAL STANDARD

A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .") (emphasis in original). A fact is material if it might affect the outcome of the suit under the governing law. *Id.* at 248. A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The moving party bears the initial burden of showing there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. Where, as here, defendant is the moving party, it need not disprove each element of plaintiff's case, but rather has met its burden if it can negate at least one of plaintiff's necessary elements. *Id.* at 322-23. The burden then shifts to the plaintiff, who may not rest upon mere denials, but must set out "'specific facts showing . . . a genuine issue for trial.'" *Id*. at 324 (citing Fed. R. Civ. P. 56(e)). If the plaintiff's evidence "is merely colorable" or "is not significantly probative," the Court should grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson*, 477 U.S. at 252).

"The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle*, 627 F.3d at 387 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

## IV.   THE COURT SHOULD GRANT SUMMARY JUDGMENT IN THE CLOROX DEFENDANTS' FAVOR ON PLAINTIFF'S LANHAM ACT CLAIMS

Both of Plaintiff's claims under the Lanham Act are premised upon a single allegedly false statement: the listing of "sternal chicken collagen" on the Collagen2 Joint Complex product label. (Dkt. No. 50, TAC, ¶¶ 2, 18.)  Because the evidence demonstrates that this statement is neither false nor misleading, is not material to consumer decision-making, and is not causally linked to any damage to Plaintiff, summary judgment for the Clorox Defendants is appropriate.

### A.   Plaintiff Cannot Prove Its Claim for False Advertising

To prevail on its false advertising claim, Plaintiff must submit evidence that: (1) the Clorox Defendants made a false statement of fact in a commercial advertisement about their own or another's product; (2) that the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) that the deception is material, in that it is likely to influence the purchasing decision; (4) that the Clorox Defendants caused their false statement to enter interstate commerce; and (5) the Plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendants or by a lessening of the goodwill associated with its products. *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012) (citing 15 U.S.C. § 1125(a)(1)(B)). Summary judgment is warranted when there is insufficient evidence to support just one of these elements. *Celotex*, 477 U.S. at 322-23.

/////

/////

/////

1  **1.  The Collagen2 Joint Complex Product Labeling is Not False or Deceptive**

2

3    Plaintiff's claim for false advertising fails to clear the first hurdle because

4  Plaintiff cannot demonstrate that the listing of sternal chicken collagen on the

5  product label is false or misleading. "To demonstrate falsity within the meaning of

6  the Lanham Act, a plaintiff may show that the statement was literally false, either on

7  its face or by necessary implication, or that the statement was literally true but likely

8  to mislead or confuse consumers." *See Southland Sod Farms v. Stover Seed Co.,* 108

9  F.3d 1134, 1139 (9th Cir. 1997).

10    Plaintiff here cannot raise a triable issue of material fact to demonstrate falsity

11  under either standard.

12  **a.  Plaintiff Cannot Show Literal Falsity**

13    Plaintiff cannot demonstrate that the listing of sternal chicken collagen as an

14  ingredient in Collagen2 Joint Complex is false because, quite simply, it is not.

15    "The standard for proving literal falsity is rigorous." *Kwan Software Eng'g,*

16  *Inc. v. Foray Technologies, LLC*, 2014 WL 572290, at *5 (N.D. Cal. Feb. 11, 2014).

17  To be "literally false" the statement must be unambiguously false. *In re Century 21–*

18  *RE/MAX Real Estate Advert. Claims Litig*., 882 F. Supp. 915, 923 (C.D. Cal. 1994);

19  *accord Time Warner Cable, Inc. v. DIRECTV, Inc*., 497 F.3d 144, 158 (2d Cir.

20  2007) ("'[O]nly an unambiguous message can be literally false.' Therefore, if the

21  language or graphic is susceptible to more than one reasonable interpretation, the

22  advertisement cannot be literally false." (citation omitted)). When evaluating

23  statements for literal falsity, the statements must be analyzed in their full context.

24  *Southland*, 108 F.3d at 1139. "'The greater the degree to which a message relies

25  upon the viewer or consumer to integrate its components and draw the apparent

26  conclusion … the less likely it is that … literal falsity will be supported.'" *Novartis*

27  *Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290

28  F.3d 578, 587 (3rd Cir. 2002) (quoting *United Indus. Corp. v. Clorox Co.,* 140 F.3d

1175, 1181 (8th Cir. 1998) (emphasis in original). An advertisement is not literally

false if consumers need extrinsic information, assumptions, or inferences to reach

the false conclusion. *Id.* at 588.

Here, Plaintiff has elicited no reliable evidence at all that the challenged

statement is literally false.

It is undisputed that there is no established regulatory, scientific or

marketplace definition of "chicken sternum collagen."[2] Plaintiff claims that "sternal

chicken collagen" is distinguished from other types of collagen by its distinct

"amino acid profile." (Dkt. No. 50, TAC, ¶¶ 1, 17; Young Decl., Ex. D, June 8,

2020 Deposition of Ahmad Alkayali ("Alkayali Dep.") at 76:18-77:10.) But Plaintiff

has not provided any scientific or factual support for this claim.[3] Moreover, even

though Plaintiff alleges that its own collagen product *is* derived from sternal

chicken—and therefore has this supposed distinct amino acid profile—a blinded,

direct comparison of both collagen products (Plaintiff's and Avicenna's) recently

performed by an independent, cGMP compliant, FDA registered, ISO Certified

pharmaceutical testing laboratory revealed that the amino acid composition of both

products is substantially similar. (Young Decl., Ex. E, Boston Analytical: Amino

acid profile of two collagen samples by liquid chromatography using UV detection,

July 23, 2020 ("Amino Acid Report.").)

/////

/////

---

[2] Defendant's biochemistry expert has opined, after conducting substantial research, that there is no established regulatory, scientific or marketplace definition of chicken sternum collagen. (Young Decl., Ex. B, June 29, 2020 Expert Report of Jeffrey Blumberg, Ph.D. ("Blumberg Report") at 2,7.) Plaintiff's corresponding expert does not dispute this opinion. (Young Decl., Ex. C, June 29, 2020 Expert Report of David C. Pallas, PhD ("Pallas Report").)

[3] Notably, Plaintiff's biochemistry expert's report did not contain any discussion of the alleged "distinct amino acid profile" of the Plaintiff's product, how that profile differs from the amino acid composition of Avicenna's product, or how those supposed differences confer any additional or distinct benefit to consumers. (Young Decl., Ex. C, Pallas Report.)

Even Plaintiff's own biochemistry expert has not offered an opinion that the Collagen2 Joint Complex product does not contain chicken sternal collagen. Rather, he provided only the limited opinion that the product was not "100%" sternal chicken collagen. (Young Decl., Ex. C, Pallas Report at 1, 5.) But this opinion cannot provide support for Plaintiff's claims, because it rests upon the false assumption that the Clorox Defendants ever advertised or represented the product to be pure or "100%" sternal chicken cartilage. They did not.[4]

Without evidence of literal falsity, Plaintiff cannot meet its burden as to this element of its claims. *See Caltex Plastics, Inc. v. Elkay Plastics Co*., 671 F. App'x 538, 539 (9th Cir. 2016) (where plaintiff submitted no tests or evidence that defendant's product did not meet the "81705 Spec," or that defendant's tests were unreliable, statements that the product "met" the 81705 Spec were not literally false).

### b.     The Allegedly False Statement is True

It is impossible for the statement at issue in this case to be literally false because the Collagen2 Joint Complex product does in fact contain sternal chicken collagen.[5] The truth of the statement is supported by numerous pieces of evidence. First, Avicenna—the supplier of the collagen in the product—has confirmed that its

---

[4] There is no evidence that the Clorox Defendants ever advertised the Collagen2 Joint Complex product as containing "100%" or "pure" sternal chicken collagen. The labeling for the product contains no such language. (Young Decl., Ex. F, CN000001-CN000004, CN000751-CN000754.) Nor is there any testimony that the product was ever advertised in such a way, or any documents to support such a claim.

[5] Even the operative complaint acknowledges that Collagen2 Joint Complex does, in fact, contain Sternum Chicken Collagen as listed on the product label. (Dkt. No. 50, TAC ¶ 19 ["Neocell Collagen2 Joint Complex lists as an ingredient "Sternal Chicken Collagen," however . . . [it is] not comprised of pure Sternal Chicken"].) Further allegations that the product includes "chicken full frames" also support this point, as the full frame would necessarily also include the sternum. (*Id.* at ¶ 19; *see also* Young Decl., Ex. P, June 12, 2020 Deposition of Ali Elnajjar ("Elnajjar Dep.") at 119:11-120:1.) Plaintiff's allegations in this matter seem to mistakenly focus on purity of the collagen, but there is no such claim on the product label or that can be attributed to the Clorox Defendants.

DEFS' MEMO OF PS & AS ISO MOTION FOR SUMMARY JUDGMENT

patented process derives chicken collagen that is 90 percent sternum cartilage. (Young Decl., Ex. P, Elnajjar Dep. at 138:15-20.) Second, the collagen batches purchased by the Clorox Defendants and used in Collagen2 Joint Complex were accompanied by independent Certificates of Analysis identifying the product as sternal chicken collagen. (*See, e.g.* Young Decl., Ex. Q, CLOROX_0000129, CLOROX_0000322, CLOROX_0000324, CLOROX_0000389, CLOROX_0000390.) Third, the blinded, independent testing of Avicenna's collagen referenced above shows that it contains collagen type II (and, notably, in substantially similar amounts to Plaintiff's product). (Young Decl., Ex. G, Boston Analytical: Dried collagen type II by Enzyme-Linked Immunosorbent Assay (ELISA), July 23, 2020 ("Collagen Report").)[6] Finally, the Clorox Defendants' retained biochemistry expert witness, Jeffrey Blumberg, Ph.D., opined that the collagen in the Collagen2 Joint Complex product is sternal chicken collagen. (Young Decl., Ex. B, Blumberg Report at 7.) Dr. Blumberg arrived at his opinion after consideration of the Avicenna manufacturing process, numerous Certificates of Analysis, and testing and laboratory reports, including the results of the independent testing mentioned above.  (*Id.*)

### c.   Plaintiff Has No Reliable Evidence of Consumer Deception

Nor has plaintiff shown that the listing of sternal chicken collagen on the Collagen2 Joint Complex product label deceived customers or was likely to deceive consumers.

To establish that a literally true statement is actionable under the Lanham Act, a plaintiff must have extrinsic evidence demonstrating that the statement either deceived or has the tendency to deceive consumers. *See Johnson & Johnson * Merck Consumer Pharms. Co. v. Smithkline Beecham Corp*., 960 F.2d 294, 297 (2d

---

[6] Plaintiff's President has testified that chicken sternum is the only source of collagen type II. (Young Decl., Ex. D, Alkayali Dep. at 40:25-41:7.)

10

Cir. 1992) (holding that where "a plaintiff's theory of recovery is premised upon a claim of implied falsehood, a plaintiff must demonstrate, by extrinsic evidence, that the challenged [advertisements] tend to mislead or confuse consumers"). Thus, if an advertisement is not literally false, "plaintiff must produce evidence, usually in the form of market research or consumer surveys, showing exactly what message ordinary consumers perceived." *Walker & Zanger, Inc. v. Paragon Indus., Inc*., 549 F. Supp. 2d 1168, 1182 (N.D. Cal. 2007). "[P]roof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients becomes critical." *See William H. Morris Co. v. Grp. W, Inc*., 66 F.3d 255, 258 (9th Cir.), *supplemented sub nom. William H. Morris Co. v. Grp. W. Inc*., 67 F.3d 310 (9th Cir. 1995); *Smithkline Beecham Corp*., 960 F.2d at 297–98 (requiring plaintiff to demonstrate that "a statistically significant part of the commercial audience holds the false belief allegedly communicated by the challenged advertisement"). "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service[.]" *Dreamwerks Prod. Grp., Inc. v. SKG Studio,* 142 F.3d 1127, 1129 (9th Cir. 1998). The likelihood of confusion must be probable, not just possible. *Murray v. Cable Nat. Broad. Co*., 86 F.3d 858, 861 (9th Cir. 1996).

Here, there is not a shred of evidence that *any* actual consumers of the Collagen2 Joint Complex product were deceived, much less a statistically significant portion of those customers. The two populations Plaintiff identified in its Complaint and through written discovery as likely to be misled were consumers comprising a "substantial segment of the public," and collagen buyers who manufacture collagen supplements. (Dkt. No. 50, TAC, ¶ 33; Young Decl., Ex. H, Third Supplemental Response to Nutranext's Interrogatory No. 17 to Certified Nutraceuticals.) But Plaintiff has adduced no evidence whatsoever of actual deception in either of those consumer groups.

/////

1      Nor is there any evidence that customers were *likely* to be deceived. The sole

2  piece of evidence that Plaintiff has presented in support of its assertion that the

3  challenged statement is likely to mislead or confuse consumers is a survey

4  performed by plaintiff's expert, Betsy D. Gelb, Ph.D. However, Dr. Gelb's survey is

5  fatally flawed, among other reasons because it does not even purport to examine the

6  relevant market—actual or potential purchasers of collagen supplements—and thus

7  cannot create a triable issue of fact on this element.

8      Survey evidence must meet the requirements under Rule 702 of the Federal

9  Rules of Evidence for admissibility of expert evidence. *See, e.g., Southland Sod*

10  *Farms*, 108 F.3d at 1142–43 & n.8. Under Rule 702, a court may permit opinion

11  testimony from an expert only if "(a) the expert's scientific, technical, or other

12  specialized knowledge will help the trier of fact to understand the evidence or to

13  determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c)

14  the testimony is the product of reliable principles and methods; and (d) the expert

15  has reliably applied the principles and methods to the facts of the case." Fed. R.

16  Evid. 702. Rule 702 requires that the trial court act as a "gatekeeper" by "making a

17  preliminary determination of whether the expert's testimony is reliable." *Elsayed*

18  *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002)

19  (overruled on other grounds by *Estate of Barabin v. AstenJohnson, Inc,* 740 F.3d

20  457, 467 (2014)); *see Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 597

21  (1993). "The proponent of the expert testimony has the burden of proving the

22  proposed expert testimony is admissible[.]" *Stambolian v. Novartis Pharms. Corp*.,

23  2013 WL 6345566, at *3 (C.D. Cal. Dec. 6, 2013) (citing *Lust ex rel. Lust v. Merrell*

24  *Dow Pharm., Inc*., 89 F.3d 594, 598 (9th Cir. 1996)). The decision whether to admit

25  or exclude expert testimony lies within the trial court's discretion. *See GE v. Joiner*,

26  522 U.S. 136, 141–42 (1997); *United States v. Calderon–Segura*, 512 F.3d 1104,

27  1109 (9th Cir. 2008).

28  /////

"'To assess the validity and reliability of a survey, a court should consider a number of criteria, including whether: (1) the proper universe was examined and the representative sample was drawn from that universe; (2) the survey's methodology and execution were in accordance with generally accepted standards of objective procedure and statistics in the field of such surveys; (3) the questions were leading or suggestive; (4) the data gathered were accurately reported; and (5) persons conducting the survey were recognized experts.'" *Kwan,* 2014 WL 572290, at *4 (citing *Medisim Ltd. v. BestMed LLC*, 861 F. Supp. 2d 158, 166 (S.D.N.Y. 2012)). "The failure of a survey to approximate actual marketplace conditions can provide grounds for inadmissibility." *Id.*

Here, Plaintiff cannot show that Dr. Gelb examined the proper universe of consumers. As Dr. Gelb herself admitted, her survey was not designed to obtain the opinions of the intended recipients of the Collagen2 Joint Complex product—actual or potential retail purchasers of collagen supplements. (*See, e.g.,* Young Decl., Ex. I, August 20, 2020 Deposition of Betsy Gelb ("Gelb Dep.") at 71:15-73:2, 82:6-8 ("Q. So you didn't conduct any surveys of retail consumers, did you? A. None."); *id.* at 81:8-86:11 ("Q. At any time in your work on this case did you consider surveying actual consumers to determine whether consumers were deceived by the labeling of this product? A. Not seriously.").)[7]

Instead, Dr. Gelb surveyed a small number of specialty physicians—specifically, rheumatologists. (Young Decl., Ex. J, June 29, 2020 Expert Report of Betsy D. Gelb, PhD ("Gelb Report").) This is an entirely irrelevant population to question about a non-prescription dietary supplement like Collagen2 Joint Complex that is marketed directly to retail consumers. (Young Decl., Ex. K, July 27, 2020

---

[7] Notably, when Dr. Gelb was asked at deposition why she did not make the choice to survey actual consumers of the product, she stated "because I was asked to conduct a survey that would—well, help—let's be real—help the plaintiff demonstrate deception." (Young Decl., Ex. I, Gelb Dep. at 81:19-22.)

Expert Rebuttal Report of Sarah Butler ("Butler Report") at 10; Young Decl., Ex. A, Brown Dep. at 144:24-145:16 (describing efforts to market Collagen2 Joint Complex to consumers).) Dr. Gelb did not even attempt to establish that rheumatologists could be counted among the actual or likely purchasers of the product—indeed, her survey included no questions about the physicians' own purchase of such supplements. (Young Decl., Ex. J, Gelb Report at Exhibit C.)

Dr. Gelb chose to survey rheumatologists because she reasoned that they *may* recommend joint supplement products to their patients. (*Id.* at 7.) Her analysis is flawed in several significant respects, and her faulty and unsubstantiated assumptions render her survey and opinions on consumer deception entirely unreliable.

First, Dr. Gelb does not establish that consumers of the product are likely to consult with *any* physician, much less a rheumatologist, before purchasing a non-prescription collagen supplement like Collagen2 Joint Complex. (*Id.* at 7; Young Decl., Ex. J, Gelb Report at Exhibit C.) The basis for Dr. Gelb's unsupported assumption is a generic "conditions of use" disclaimer that she found on a single website—WebMD.com—that advises viewers of the website to "speak with your doctor or health care professional before you start, stop, or change any prescribed part of your health care plan or treatment." (Young Decl., Ex. K, Butler Report at 11-12.) Dr. Gelb expressly disclaimed asking any potential consumers about whether—and if so, whom—those consumers would consult before purchasing supplements, or whether those consumers would even look online before purchasing supplements. (*See, e.g.,* Young Decl., Ex. I, Gelb Dep. at 72:18-25; 118:20-120:8; 82:6-8.)

Second, Dr. Gelb's report presented no evidence that rheumatologists generally recommend any collagen supplements to their patients—much less supplements comprised of chicken sternum. (Young Decl., Ex. J, Gelb Report at 7; *id.* at Exhibit C; Young Decl., Ex. I, Gelb Dep. at 127:3-6 ("Q. Do you have any

1  evidence that rheumatologists generally recommend collagen supplements? A. I

2  have no evidence one way or the other.").)

3      Further, Dr. Gelb assumed, but did not establish, that rheumatologists would

4  be aware of purported benefits of sternal chicken collagen supplements and use that

5  knowledge as the basis for any recommendations of supplements. (Young Decl., Ex.

6  J, Gelb Report, at 7; *id.* at Exhibit C.)

7      Finally, Dr. Gelb failed to establish that any of her survey respondents have

8  even specifically recommended sternal chicken collagen supplements to patients.

9  (Young Decl., Ex. J, Gelb Report at 7; *id.* at Exhibit C; Young Decl., Ex. I, Gelb

10  Dep. at 127:7-12 ("Q. Okay. And is there any evidence that the rheumatologists you

11  surveyed had specifically recommended Type II Collagen supplements? A.

12  None.").)

13      Accordingly, Dr. Gelb's report is not material to any issue in the case, or on

14  this motion. She did not in any way analyze the impact on the "person to whom the

15  advertisement is addressed." *Merck Eprova AG v. Brookstone Pharms.*, 920 F.

16  Supp. 2d 404, 418 (S.D.N.Y.2013); *compare Kwan,* 2014 WL 572290, at *5

17  ("Because [defendant]'s labels and package inserts were intended to encourage

18  product substitution, and thus directed in part to pharmacists and physicians ...,

19  [plaintiff] surveyed those groups.") (internal citations omitted).

20      Lacking evidence that actual customers were misled or that a statistically

21  significant number of consumers were likely to be misled by the label, Plaintiff

22  cannot demonstrate the Collagen2 Joint Complex label was misleading or confusing.

23  Because there is also no evidence of literal falsity, there is no triable issue of fact

24  regarding the allegedly false statement, and the Clorox Defendants are entitled to

25  summary judgment of Plaintiff's claims on this basis as well. *See Kwan,* 2014 WL

26  572290, at *4-*5 (N.D. Cal. Feb. 11, 2014) (granting summary judgment because

27  unreliable survey could not create a dispute of fact).

28  /////

### 2.  **Plaintiff Cannot Prove Materiality**

The Lanham Act requires a plaintiff to demonstrate that any alleged deception is material, meaning "it is likely to influence the purchasing decision . . . ."  *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003) (reversing denial of summary judgment because false statements could not influence the purchasing decision) (overruled on other grounds by *Skidmore as Trustee for Randy Craig Wolfe Trust v. Zeppelin,* 952 F.3d 1051, 1069 (9th Cir. 2020); *see Appliance Recycling Centers of Am., Inc. v. JACO Envtl., Inc*., 378 F. App'x 652, 655 (9th Cir. 2010) (affirming summary judgment in part "because the references to the patent and claims to have pioneered the system are not material, no reasonable jury could find that they or any similar statements were likely to cause future injury."); *Sidense Corp. v. Kilopass Tech. Inc*., 2012 WL 3545289, at *11 (N.D. Cal. Aug. 16, 2012) (granting summary judgment where no evidence that deception was likely to influence purchasing decision).

Here, Plaintiff has adduced no evidence that the allegedly false statement on the Collagen2 Joint Complex label is material to the purchasing decision of the relevant customers. As noted above, there is no evidence that any consumer was actually deceived by the supposedly false statement. Additionally, because Plaintiff's consumer survey interrogated the wrong universe of recipients, Plaintiff did not conduct a consumer survey that adequately tested the materiality of the allegedly false statements. *See, e.g.*, *Castrol, Inc. v. Pennzoil Co*., 987 F.2d 939, 954 (3rd Cir. 1993) (Roth, J., dissenting) ("Consumer survey evidence is extremely helpful in determining whether an allegedly false statement is material. Evidence of 'consumer reaction' is essential to 'the issue of whether or not the ad has actually affected consumer purchasing behavior.'"). Nor does Plaintiff have any other evidence of likely consumer confusion. As such, Plaintiff simply has no evidence that consumers are likely to consider the allegedly false statement to be material to their purchasing decision.

1    Without this evidence, Plaintiff can only speculate as to whether the allegedly

2    false statements are material, but guesswork and suggestion as to how consumers

3    could have reacted are insufficient. There must be actual, admissible evidence to

4    support the contention of materiality. In other words, Plaintiff "must show how

5    consumers *actually do* react," *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902

6    F.2d 222, 228-29 (3rd Cir. 1990) (emphasis in original), by offering evidence that

7    consumers base their purchasing decision on the allegedly false statements.

8        Thus, there is no evidence to prove the third element of Plaintiff's False

9    Advertising claim.  On this basis as well, summary judgment is appropriate.

10   **3.    Plaintiff Has No Evidence that It Suffered Actual Injury**
         **Caused by Defendants' Conduct**

11

12       The record also contains insufficient evidence that the Clorox Defendants'

13   alleged false advertising caused Plaintiff any injury whatsoever. Although Plaintiff

14   claims monetary damages in the form of lost customers, reduced profits, additional

15   advertising costs, and lost market share, Plaintiff has neither adduced nor presented

16   any evidence to support these claims.

17       A plaintiff seeking damages under the Lanham Act in a non-comparative

18   advertising suit such as this case must show it suffered actual injury caused by the

19   defendant's deception. *Harper House v. Thomas Nelson, Inc.*, 889 F.2d 197, 210

20   (9th Cir. 1989); *Air Turbine Tech., Inc. v. Atlas Copco AB*, 410 F.3d 701, 709 (Fed.

21   Cir. 2005). The injury must flow directly from the advertisements which are shown

22   to be false. *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir.

23   1993), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.*,

24   839 F.3d 1179, 1180 (9th Cir. 2016); *see Out of the Box Enterprises, LLC v. El*

25   *Paseo Jewelry Exch., Inc.*, 2012 WL 12893690, at *12 (C.D. Cal. May 11, 2012)

26   ("If [Plaintiff] cannot present evidence of lost profits or of actual consumer

27   deception resulting from [Defendants'] advertisement, it cannot prove the requisite

28   injury.")

1    Plaintiff falls far short of meeting this burden. Plaintiff has not produced any

2  evidence in support of its claimed damages. Nor has Plaintiff even attempted to

3  quantify any actual losses that it sustained.[8] The Clorox Defendants would

4  respectfully submit that this is because Plaintiff did not suffer any damages as a

5  result of the Clorox Defendants' actions.[9]

6    First, Plaintiff has no evidence to substantiate its claim that it lost any

7  customers as a result of the Clorox Defendants' labeling of Collagen2 Joint

8  Complex.[10] ████████████████████████████████████

9  ████████████████████████████████████

10 ████████████████████████████████████

11 ████████████████████████████████████

12 ████████████████████████████████████

13 ████████████████████████████████████

14 ████████████████████████████████████

15 ████████████████████████████████████

16 ████████████████████████████████████

17 ████████████████████████████████████

18 ───────────────────

19 [8]Although Plaintiff retained an expert to assess its damages, Plaintiff's expert
   focused exclusively on the Clorox Defendants' profits and revenues, and did not
20 offer any opinion as to Plaintiff's claimed losses. (Young Decl., Ex. L, June 29,
   2020 Expert Report of David B. Connelly ("Connelly Report").)

21 [9] The Clorox Defendants raised Plaintiff's lack of injury as a challenge to Plaintiff's
22 Article III standing in their motion to dismiss the Second Amended Complaint.
   (Dkt. No. 22.) Plaintiff survived this challenge with allegations that Defendants'
23 false advertisements decreased demand for Plaintiffs' products, thereby causing
   economic harm. (Dkt No. 25.) Plaintiff's inability to show any damages whatsoever
24 connected to Defendants' advertising makes clear that Plaintiff lacks the required
   Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 590 (1992)
25 (Blackmun, J., dissenting). A case that lacks Article III standing must be dismissed
   for lack of subject matter jurisdiction. *See Maya v. Centex Corp.*, 658 F.3d 1060,
26 1067 (9th Cir. 2011).

27 [10] Nor could such evidence exist, as Plaintiff and the Clorox Defendants do not share
   customers. The Clorox Defendants sell collagen supplements in the retail
28 marketplace. (Dkt. No. 50, TAC ¶ 22.) In contrast, Plaintiff sells raw ingredients to
   nutraceutical companies for manufacture into supplements. (*Id.* at ¶ 14.)



Similarly, Plaintiff has produced no evidence to support its claim of lost market share. As calculated by the Clorox Defendants' economic expert, Certified Public Accountant Paul Zimmer, Plaintiff's sales revenues from its collagen products have ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Young Decl., Ex. M, Zimmer Report at 4.)

Finally, Plaintiff's claim that it spent additional advertising, marketing and related costs to correct the effects of the Clorox Defendants' false advertising is unsupported. Plaintiff produced no evidence of any additional expenses, and the actual data shows that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at 5.)

### B.   Plaintiff Cannot Prove Its Claim for False Designation of Origin

A false designation of origin claim requires proof that a defendant "(1) use[d] in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services." *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007). The likelihood of confusion must be probable, not just possible. *Murray*, 86 F.3d at 861.

/////

Plaintiff's false designation of origin claim fails for the same reasons as Plaintiff's false advertising claim.[11] Plaintiff cannot prove that the challenged statement—listing sternal chicken collagen as an ingredient on the label of the Collagen2 Joint Complex product—was false or misleading (as discussed more fully, *supra*, § IV(A)(1)). Nor can Plaintiff prove that the statement was likely to cause confusion or that it misrepresented the characteristics of the product, as Plaintiff did not conduct an adequate survey of "reasonably prudent consumer[s] in the marketplace[.]" *Dreamwerks,* 142 F.3d at 1129.

## V.     THE DOCTRINE OF UNCLEAN HANDS BARS PLAINTIFF'S CLAIMS

Finally, Plaintiff's unclean hands prevent it from receiving any relief in this action, as a matter of law. The doctrine of unclean hands "bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted." *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989). "Unclean hands is a defense to a Lanham Act infringement suit." *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 870 (9th Cir. 2002) (quoting *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987)) (internal quotation marks omitted).

The Clorox Defendants join in the legal arguments raised by Avicenna in its separately-filed motion for summary judgment with regard to Plaintiff's unclean hands, and incorporate by reference those arguments as if stated in full in this motion. Avicenna's arguments with regard to Plaintiff's unclean hands barring its recovery in this case apply with equal force to the Clorox Defendants. In brief, it has been established that Plaintiff falsely advertised its collagen product, claiming it was covered by a patent when it was not. *See Certified Nutraceuticals, Inc,* 2018 WL

---

[11] As noted above, both of Plaintiff's Lanham Act claims are based on the same allegation. (Dkt. No. 50, TAC, ¶¶ 38-40.)

1  3618243, at *4 ("it appears Plaintiff knowingly made false statements regarding the

2  patented nature of KollaGen . . . the Court finds Defendant has met its burden of

3  demonstrating Plaintiff's wrongfulness, willfulness, and bad faith in engaging in

4  inequitable conduct with clear and convincing evidence.").[12] Plaintiff's conduct in

5  that case directly relates to the subject matter of this litigation, where Plaintiff

6  claims the Clorox Defendants falsely advertised Collagen2 Joint Complex as

7  containing chicken sternal collagen. (Dkt. No. 50, TAC, ¶¶ 1, 2.) Plaintiff's

8  inequitable conduct precludes Plaintiff from recovering in this action.

9      The Clorox Defendants' joinder adopts the same arguments and grounds filed

10  in support of Avicenna's motion for summary judgment, all papers and pleadings on

11  file with the Court, and such other further evidence as may be offered at the time of

12  the Court's consideration of Avicenna's motion. The Clorox Defendants further

13  request the same order and relief in their favor as that requested by Avicenna, based

14  on the same legal and factual grounds set forth in that motion.

15  /////

16  /////

17  /////

18  /////

19  /////

20

21  [12] The Clorox Defendants request that the Court take judicial notice of this finding

22  from the Amended Order Granting Defendant's Motion for Summary Judgment, Dkt. No. 47 (dated July 30, 2018) in the lawsuit entitled *Certified Nutraceuticals v. Avicenna Nutraceutical, LLC*, Case No. 3:16-cv-02810-BEN, attached to the Young

23  Decl. as Exhibit R. Courts may take judicial notice of facts that are "not subject to reasonable dispute," in that they are "generally known within the trial court's

24  territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court

25  must take judicial notice of such matters if they meet the criteria set forth in Rule 201 and judicial notice is requested.  Fed. R. Evid. 201(c)(2). A court may judicially

26  notice court records from other actions that directly relate to the matters at issue. *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc*., 971 F.2d 244, 248

27  (9th Cir. 1992) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have direct relation to

28  matters at issue.") (citation omitted).

## VI.   CONCLUSION

For the foregoing reasons, the Clorox Defendants respectfully request that the Court enter an order granting summary judgment in their favor and against Plaintiff.

Dated:  September 14, 2020

DLA PIPER LLP (US)

By: _/s/ Christopher M. Young_
      Christopher M. Young
      Ashleigh L. Angeletti
      Attorneys for Defendants
      THE CLOROX COMPANY,
      NUTRANEXT, and NEOCELL
      HOLDING COMPANY