**Sergenian Ashby LLP**
David A. Sergenian (SBN 230174)
david@sergenianashby.com
1055 West Seventh Street, 33rd Floor
Los Angeles, California 90017
Tel. (323) 318-7771

*Attorneys for Plaintiff Certified*
*Nutraceuticals, Inc.*

## THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **Certified Nutraceuticals, Inc.**, a California corporation,<br><br>       Plaintiff,<br>   v.<br><br>**The Clorox Company**, a Delaware corporation; **Neocell Corporation**, a California corporation; **Neocell Holding Company**, a Delaware limited liability company; **Nutratext**, a Delaware corporation; **Avicenna Nutraceutical, LLC**, a Georgia limited liability company; and **Does 1 through 10**, inclusive,<br><br>       Defendants. | Case No. 3:18–cv–00744–W–KSC<br><br>**Plaintiff Certified Nutraceuticals, Inc.'s Opposition to the Clorox Defendants' Motion for Summary Judgement**<br><br>NO ORAL ARGUMENT PURSUANT TO LOCAL RULES<br><br>Date:    October 19, 2020<br>Ctrm:   3C<br>Judge:  Hon. Thomas J. Whelan<br><br><br>     UNDER SEAL |

# TABLE OF CONTENTS

I.    Introduction ........................................................................... 1

II.   Correction of Misstated Fact .............................................. 1

III.  Argument ............................................................................... 2

    A.   It Is Undisputed that Clorox's Advertisements of Its Joint Complex Product Are Literally False ............................................. 2

    B.   There Is a Dispute of Material Facts as to Whether the Labeling of the Joint Complex Product Is False or Misleading .................. 6

        1.   The Joint Complex Labeling Is Literally False or False by Implication ............................................................. 6

        2.   The Joint Complex Labeling Is Misleading ........................ 11

    C.   Certified Nutraceuticals Has Sufficient Evidence of Materiality ........................................................................................ 16

    D.   Certified Nutraceuticals Has Sufficient Evidence of Actual Injury Caused by The Clorox Defendants' Conduct ............................... 18

    E.   Certified Nutraceuticals Has Sufficient Evidence to Support Its Claim for False Designation of Origin ......................................... 21

    F.   The Clorox Defendants Are Not Entitled to Summary Judgment on Their Unclean Hands Affirmative Defense ............................ 21

IV.  Conclusion ........................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Apple Inc. v. Amazon.com Inc.*, 915 F. Supp. 2d 1084, 1090 (N.D. Cal. 2013) ...................................................................................................... 11

*Appliance Recycling Centers of Am., Inc. v. JACO Envtl., Inc.*, 378 F. App'x 652 (9th Cir. 2010)........................................................................... 17

*Clorox Co. P.R. v. Proctor & Gamble*, 228 F.3d 24, 35 (1st Cir. 2000)............ 7

*Cuisinarts, Inc. v. Robot–Coupe Int'l Corp.*, No. 81 Civ 731–CSH, 1982 WL 121559, *2 (S.D.N.Y. June 9, 1982).................................................. 7

*Design Res. v. Leather Indus. of Am.*, 789 F.3d 495, 502–03 (4th Cir. 2015) . 6

*Energy Four, Inc. v. Dornier Medical Systems, Inc.*, 765 F. Supp. 724, 731 (N.D.Ga.1991) ............................................................................. 16

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010)................................................... 14

*Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1367 (Fed. Cir. 2013) .... 5, 6

*Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 209 (9th Cir. 1989) ...................................................................................................... 6

*Icon Enterprises Int'l, Inc. v. Am. Prod. Co.*, No. CV 04-1240 SVW PLAX, 2004 WL 5644805, at *26 (C.D. Cal. Oct. 7, 2004) ................................. 14

*In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 947 (C.D. Cal. 2015), aff'd sub nom. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017), and aff'd sub nom. *Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017) ....................................................................................... 15

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242 (11th Cir. 2002)....................................................................... 17

*Kwan Software Eng'g, Inc. v. Foray Techs.*, LLC, No. C 12-03762 SI, 2014 WL 572290 (N.D. Cal. Feb. 11, 2014)...................................................... 14

*Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 [(9th Cir. 1993) ......... 18

**Opposition to Clorox's Motion for Summary Judgment**

*Morales v. Kraft Foods Grp., Inc.*, No. LACV1404387JAKPJWX, 2017 WL 2598556, at *12 (C.D. Cal. June 9, 2017) ................................................ 14

*Nat'l Products, Inc. v. Gamber-Johnson LLC*, 699 F. Supp. 2d 1232, 1241 (W.D. Wash. 2010) ....................................................................................... 5

*Novartis Consumer Health v. Johnson & Johnson,* 290 F.3d 578, 588 (3d Cir. 2002) ........................................................................................................ 6

*Nutrition Distribution LLC v. PEP Research*, LLC, No. 16CV2328-WQH-BLM, 2019 WL 652391 (S.D. Cal. Feb. 15, 2019) ............................. 5, 6, 16

*POM Wonderful LLC v. Purely Juice, Inc.*, No. CV-07-02633CAS(JWJX), 2008 WL 4222045, at *11 (C.D. Cal. July 17, 2008), aff'd, 362 F. App'x 577 (9th Cir. 2009) ................................................................................. 16, 17

*Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003) ........................ 17

*Quidel Corp. v. Siemens Med. Sols. USA, Inc.*, No. 16-CV-3059-BAS-AGS, 2019 WL 5328730 (S.D. Cal. Oct. 21, 2019) ...................................... 14, 15

*Sidense Corp. v. Kilopass Tech. Inc.*, No. C 11-04112 SI, 2012 WL 3545289 (N.D. Cal. Aug. 16, 2012) ............................................................................ 18

*Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105 (9th Cir. 2012) ........... 16

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) ....................................................................................................... 6, 7

*Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007) ............................................................................................................... 6

*Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1025 (C.D. Cal. 2018) ........................................................................................................... 14

*U-Haul Intl., Inc. v. Jartran Inc.*, 793 F.2d 1034 (9th Cir. l986) .................. 16

*Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87 (3rd Cir. 2000) ....... 16

*William H. Morris Co. v. Grp. W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995), supplemented sub nom. *William H. Morris Co. v. Grp. W. Inc.*, 67 F.3d 310 (9th Cir. 1995) ................................................................................... 5, 6, 11

**Opposition to Clorox's Motion for Summary Judgment**

**Statute**

15 U.S.C. § 1117(a) ........................................................................... 18

**Treatise**

4 McCarthy § 32.54[4] ..................................................................... 12

**Opposition to Clorox's Motion for Summary Judgment**

# I.   INTRODUCTION

Plaintiff Certified Nutraceuticals, Inc. respectfully submits this brief opposing the Clorox Defendants' Motion for Summary Judgment. The Clorox Defendants are not entitled to summary judgment because there are material disputes of fact with respect to all of the issues raised by the Clorox Defendants. The Clorox Defendants have engaged in false advertising (which the Clorox Defendants do not address in their motion) and labeling with respect to the Neocell Joint Complex product. The advertisements are literally false, false by implication, and misleading, and Certified Nutraceuticals has sufficient evidence to put these issues, as well as the other issues raised in the Clorox Defendants' motion (i.e., materiality and injury). In addition, the Clorox Defendants are not entitled to summary judgment on their unclean hands defense for the same reasons that Defendant Avicenna Nutraceuticals, Inc. is not entitled to summary judgment on its unclean hands defense.

# II.   CORRECTION OF MISSTATED FACT

Before addressing the merits of the Clorox Defendants' argument, it is important to correct a misstatement of fact in the Clorox Defendants' Motion. The Clorox Defendants claim that it is Certified Nutraceuticals' contention that Defendants' false advertising began in February 2018. (ECF No. 117-1 at p. 3:21–22.) Certified Nutraceuticals has never limited its damages period to exclude the period before February 2018. The Clorox Defendants base this assertion on Paragraph 23 of the Third Amended Complaint. That pleading states that "as of February of 2018" and continuing to the present, Defendants falsely have advertised their products through various channels. (ECF No. 50 (Jun. 24, 2019) ¶ 23.) The unverified pleading, which was not intended to limit the damages period in this action, was filed before discovery had begun, and referred necessarily to pre-discovery assertions. In any event, abundant evidence shows that the false advertising by the Clorox Defendants

occurred well before 2018, in addition to the time period from 2018 through present. (*See* Ex. 6 to Declaration of David A. Sergenian ("Sergenian Decl.") (April 1, 2016 Amazon advertisement stating Neocell's Collagen Type 2 product was "made of 100% pure collagen type II from chicken sternal cartilage"), Ex. 8 (August 28, 2016 advertisement on Neocell's website for Collagen Type 2 Joint Complex stating that the supplement contains 2,400 mg of "Sternal Chicken Collagen").)

## III.   ARGUMENT

### A.   It Is Undisputed that Clorox's Advertisements of Its Joint Complex Product Are Literally False

The Clorox Defendants argue that Certified Nutraceuticals' false advertising claims are based entirely on the Neocell Joint Complex product label. (ECF No. 117-1 at 6:7–9.) This is incorrect. The operative complaint alleges that the Clorox Defendants have advertised the Neocell Joint Complex product, among other places, on Amazon.com. (ECF No. 50 ¶ 26.) Specifically, Paragraph 26 of the Third Amended Complaint provides a URL for an Amazon.com listing for the Joint Complex product, and quotes the product description in which the product is described as "a naturally complete joint support supplement made of 100% pure collagen type II from chicken sternal cartilage." (*Id.* ¶ 26.) That listing on Amazon.com is still active. (Sergenian Decl. ¶ 2; Ex. 5.) Furthermore, the same language appeared in a listing for the Joint Complex product on Amazon.com as early as April 1, 2016. (*See id.* ¶ 3, Ex. 6 (product description states that the product "made of 100% pure collagen type II from chicken sternal cartilage.").) Moreover, the Clorox Defendants continue to advertise their product as being made of 100% pure type 2 collagen from chicken sternal collagen. For example, Neocell Joint Complex is currently being advertised on pharmaca.com. (*Id.* ¶ 4, Ex. 7.) That advertisement states that "Collagen is a safe food sourced supplement made of

– 2 –

100% pure type 2 collagen from chicken sternal cartilage." (*Id*.) Similarly, Neocell Joint Complex is currently being advertised on dailyvita.com. (*Id*. ¶ 9, Ex. 12.) The advertisement on dailyvita.com states that the product is "made of 100% pure type 2 collagen from chicken sternal cartilage." (*Id*.) The Clorox Defendants make substantially the same claim on sears.com. (*Id*. ¶ 10, Ex. 13.) There, the product is described as "a complete joint support supplement made of 100% pure collagen type Ii from chicken sternal cartilage", "[m]ade Of 100% Pure Collagen Type Ii From Chicken Sternal Cartilage" and "100% Pure Chicken Sternum Cartilage Collagen Type Ii, The Most Abundant Structural Protein Found In Joints." (*Id*.)

The Clorox Defendants have testified that they dictate the advertising that is used across their channels of distribution. Staunton Brown, the Rule 30(b)(6) designee for the Clorox Defendants on the Clorox Defendants' sales channels of its collagen products, the advertising and marketing of Clorox's collagen products, the labeling of Clorox's collagen products, and public statements by Clorox regarding its collagen products (Ex. 16 to Sergenian Decl. (Transcript of June 10, 2020 Deposition of Staunton Brown ("Brown Dep. Tr.") at 23:14–24:1, 24:16–25:8), testified that the Clorox Defendants have advertised its collagen products through print, digital, and other media, including through Amazon. (*Id*. at 157:10–19.) Mr. Brown provides direction to the marketing team, which then develops and executes based on that direction across all of marketing. (*Id*. at 158:4–19.) The sales channels through which the Clorox Defendants sell their collagen products include e-commerce (primarily Amazon.com and iHerb.com), the "natural channel," international, and direct to consumer. (*Id*. at 31:7–24.)

It is undisputed that the advertisements stating that Joint Complex is made of 100% pure type 2 collagen from chicken sternal cartilage are literally false. The CEO of Avicenna—the supplier of the raw ingredient of Clorox's

**Opposition to Clorox's Motion for Summary Judgment**

Joint Complex product—testified that ██████████████████
████████████████████████████████████████ (Ex.
17 to Sergenian Decl. (Transcript of June 10, 2020 Deposition of Ali Elnajjar
("Elnajjar Dep. Tr.") at 231:22–232.) In fact, ████████████████████
██████████████████████ (*Id.* at 195:22–197:11.)[1] Mr. Elanjjar testified that
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████
     ██   ████████████████████████████████████
         ████████████████████████████████████
      ████████████████████████
      ██████████████
   ██   ████

(*Id.* at 207:21–208:8; *see also id.* at 140:17–19 ("████████████████
████████████████████████████████████████████████
████████████") In addition, Certified Nutraceuticals' expert in Biochemistry,
David C. Pallas, Ph.D., has opined that Avicenna's product is not pure
chicken sternum collage type II, but contains collagens of non-sternum origin
and contains collagens other than type II. (Ex. 18 to Sergenian Decl. (Expert
Report of David C. Pallas, Ph.D.) at pp. 5–8.)

_____

[1] The Clorox Defendants mistakenly claim that Mr. Elanjjar stated that ████
████████████████████████████████ (ECF No. 117-1 at 9:18–
10:2.) The Clorox Defendants neglect to point out that immediately after Mr.
Elanjjar provided this ████████████████████████████. (Ex.
17 to Sergenian Decl. at 138:21–138:4)
████████████████████████████████████████████████
[2] ████████████████████████████████████████████████
████████████████████████████████████████████████
(Ex. 17 to Sergenian Decl. (Elnajjar Dep. Tr.) at 202:6–203:11.)

**Opposition to Clorox's Motion for Summary Judgment**

1  Accordingly, there is no dispute that Clorox's advertisements of the Ne-
2  ocell Joint Complex product contain literally false statements: Joint Complex,
3  by the admission of the CEO of Avicenna, the manufacturer of the raw ingre-
4  dient that comprises the chicken collagen in Joint Complex admitted that Av-
5  icenna's chicken collagen is not 100% collagen, and that the statement that
6  Joint Complex is made of 100% pure collagen type II from chicken sternal
7  cartilage is false. Based on these undisputable facts, the Clorox Defendants
8  are not entitled to summary judgment with respect to establishing false or
9  misleading advertisements. *See Nutrition Distribution LLC v. PEP Research*,
10 LLC, No. 16CV2328-WQH-BLM, 2019 WL 652391, at *6 (S.D. Cal. Feb. 15,
11 2019) ("Plaintiff may benefit from a presumption of deception only by showing
12 that Defendants intended to deceive consumers, or showing that the Repre-
13 sentations are false.") (citing *William H. Morris Co. v. Grp. W, Inc.*, 66 F.3d
14 255, 258 (9th Cir.), supplemented sub nom. *William H. Morris Co. v. Grp. W.*
15 *Inc.*, 67 F.3d 310 (9th Cir. 1995), and *Hall v. Bed Bath & Beyond, Inc.*, 705
16 F.3d 1357, 1367 (Fed. Cir. 2013)).

17 Furthermore, notwithstanding that the false advertisements on Ama-
18 zon.com was specifically referenced in the Third Amended Complaint, the
19 Clorox Defendants did not make any effort to take the advertisement down
20 in the intervening two-plus years since the Third Amended Complaint was
21 filed. (ECF No. 50 (Third Am. Compl.) ¶ 26 (providing URL to Amazon.com
22 listing falsely claiming Joint Complex is "made of 100% pure collagen type II
23 from chicken sternal cartilage" and quoting that language verbatim); Serge-
24 nian Decl. ¶ 2; Ex. 5 (the same Amazon.com listing is still active as of October
25 4, 2020). The inference is that the Clorox Defendants' false advertisement is
26 willful. This leads to a presumption that the false advertisement has caused
27 consumer deception. *See Nat'l Products, Inc. v. Gamber-Johnson LLC*, 699 F.
28 Supp. 2d 1232, 1241 (W.D. Wash. 2010) ("deliberate falsity yields a

**Opposition to Clorox's Motion for Summary Judgment**

presumption of consumer deception in cases of non-comparative advertising….”); *Nutrition Distribution LLC*, 2019 WL 652391, at *5 (“When a plaintiff has shown falsity, deception may be presumed if the defendant intended to deceive customers.”) (citing *William H. Morris Co. v. Grp. W. Inc.*, 66 F.3d at 258, *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 209 (9th Cir. 1989), and *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d at 1367 (stating “no extrinsic evidence of consumer confusion is required” to show deception for literally false statements) (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007))). Accordingly, for this reason alone, the Clorox Defendants’ Motion should be denied with respect to falsity, materiality, and injury.

## B.   There Is a Dispute of Material Facts as to Whether the Labeling of the Joint Complex Product Is False or Misleading

The Clorox Defendants claim that the labeling of the Neocell Joint Complex product is not false, and not misleading. Summary judgment based on this issue is inappropriate because there are numerous disputes of material fact with respect to whether the Joint Complex label is false or misleading.

### 1.   The Joint Complex Labeling Is Literally False or False by Implication

The Joint Complex label is literally false, or in the alternative, false by implication. A Lanham Act claimant may prove falsity by showing the statement was “literally false, either on its face or by necessary implication….” *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). Courts recognize literal falsity by necessary implication when a consumer “will necessarily and unavoidably” receive a false message “from the product's name and advertising.” *Novartis Consumer Health v. Johnson & Johnson*, 290 F.3d 578, 588 (3d Cir. 2002); *Design Res. v. Leather Indus. of Am.*, 789

– 6 –

F.3d 495, 502–03 (4th Cir. 2015) (stating "the contested conclusion" must "necessarily flow[ ] from the ad's statements" or be "logically necessary"); *see also Clorox Co. P.R. v. Proctor & Gamble*, 228 F.3d 24, 35 (1st Cir. 2000) ("A claim is conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated."). As the Ninth Circuit explained in *Southland Sod*, "the court must view the face of the statement in its entirety, rather than examining the eyes, nose, and mouth separately and in isolation from each other." *Southland Sod*, 108 F.3d at 1139 (quoting *Cuisinarts, Inc. v. Robot–Coupe Int'l Corp.*, No. 81 Civ 731–CSH, 1982 WL 121559, *2 (S.D.N.Y. June 9, 1982)).

The Joint Complex label, as it existed at the time the Third Amended Complaint was filed, stated that a serving contained 2,400 mg of "Protein (from Collagen)":



(Ex. 1 to Declaration of Ahmad Alkayali ("Alkayali Decl."); *id.* ¶ 2.) This labeling had appeared for several years on the Joint Complex product. (*See* Sergenian Decl. ¶ 5, Ex. 8 (substantially identically Supplement Facts from

**Opposition to Clorox's Motion for Summary Judgment**

Neocell's website in August 2016); *id.* ¶ 6, Ex. 9 (substantially identical Supplement Facts from Neocell's website in September 2015); *id.* ¶ 7, Ex. 10 (substantially identical Supplement Facts from Neocell's website in September 2015).) The labeling claimed that all of the ingredients (other than stearic acid, vegetable magnesium stearate, and gelatin capsules) in the supplement are protein from collagen. The label further states that the collagen is comprised of "Sternal Chicken Collagen."

The statement on the Joint Complex label that the product is comprised of 2,400 mg of Sternal Chicken Collagen is literally false. As discussed above, in Section III.A., the raw ingredient of Joint Complex is not made of 100% collagen type II from chicken sternal cartilage, ███████████████████████ ████████████████████████████████████████████████████████ (Ex. 17 to Sergenian Decl. (Elnajjar Dep. Tr.) at 140:17–19, 207:21–208:8; Ex. 18 to Sergenian Decl. (Pallas Report) at pp. 5–8.) Given these facts, it is literally false that each serving of Joint Complex contains 2,400 mg of "sternal chicken cartilage," or even collagen, as the Joint Complex label claims. In fact, ████████████████████████████████████████████████. (Ex. 17 at 195:22–197:11.) This means that only 1,680 mg of each serving of Joint Complex is guaranteed to be comprised of sternal chicken cartilage or any type of collagen.

In the alternative, the Joint Complex label is false by implication. At the very least, the Joint Complex label implies that 100% of the contents of the supplement are collagen type II from sternal chicken cartilage. Yet, ████ ████████████████████████████████████████████████████████ ████████. (Ex. 17 to Sergenian Decl. (Elnajjar Dep. Tr.) at 140:17–19.) If not a literal falsehood, the label at least implies that there are no ingredients that go into the Joint Complex capsules other than collagen or sternal chicken cartilage. If the Clorox Defendants' position is that the label does not mean

**Opposition to Clorox's Motion for Summary Judgment**

that 100% of the 2,400 mg per serving are collagen or sternal chicken colla-gen, then they must show what the other ingredients are. So far, the Clorox Defendants have not explained what the other ingredients are (if any) other than sternal chicken cartilage, or why these purported ingredients are not disclosed on the label. This presents a triable issue of fact for the jury to de-termine whether the label, by implication, is false.

The Clorox Defendants claim that it is a true statement of fact that the Joint Complex product contains sternal chicken collagen. (ECF No. 117-1 at 9:16-17; *see also id.* at 20:2-4 (framing the issue as whether Clorox's label "list[s] sternal chicken collagen as **an** ingredient") (emphasis added).) Clorox is misstating the issue and setting up a strawman to argue against. Certified Nutraceuticals does not allege that Joint Complex contains no chicken ster-num at all. The allegation in the Third Amended Complaint is that the Clorox Defendants are passing their product as "comprised of pure Sternal Chicken…" (ECF No. 50 ¶ 18.) The Clorox Defendants are trying to lower the bar by claiming that if their product contains any chicken sternum than they have not engaged in false advertising.[3]

The Clorox Defendants further misstate the issue by claiming that in-dependent analysis of Avicenna's product purportedly shows that Avicenna's

---

[3] The Clorox Defendants point to a Certificate of Analysis that claims that the product is sternal chicken collagen. (ECF No. 117-1 at 10:2–7.) However, this is nothing more than a statement by Avicenna claiming, without evi-dence, that its product contains sternal chicken collagen, or more accurately, using the words sternal chicken collagen in its product description. (Ex. Q to Young Decl.) This does not negate the admission of Avicenna's CEO that its product is guaranteed to be no more than 70% chicken collagen (Ex. 17 to Sergenian Decl. (Elnajjar Dep. Tr.) at 195:22–197:11), or the opinion of Cer-tified Nutraceuticals' expert witness on Biochemistry, Dr. Pallas. (Ex. 18 to Sergenian Decl.)

**Opposition to Clorox's Motion for Summary Judgment**

product contains some "collagen type II." (ECF No. 117-1 at 10:7–11.) However, this is more of the Clorox Defendants trying to lower the bar from what is required of them to prove their labeling is true. Showing that the product contains some collagen type II would not make the labeling true and accurate. Furthermore, although the Clorox Defendants point to deposition testimony of Certified Nutraceuticals CEO Mr. Alkayali discussing the sources of collagen, they misstate the record. Mr. Alkayali testified that bone, blood, and meat do not contain collagen type II. (Ex. D to Young Decl.) at 40:25–41:7.) He did not state that "chicken sternum is the only source of collagen type II," as the Clorox Defendants misstate. (ECF No. 117-1 at 10 n.6.)

Finally, the Clorox Defendants point to their expert, Dr. Blumberg, who purportedly opined "that the collagen in the Collagen2 Joint Complex product is sternal chicken collagen." (ECF No. 117-1 at 10:11–14.) This is a misstatement. The cited portion of Dr. Blumberg's report merely states:

> It is reasonable to conclude that the products from Certified Nutraceuticals and Avicenna Nutraceutical are substantially chicken sternum collagen Type II based upon the available descriptions of their respective manufacturing processes, the identification of avian or chicken sternum or keel cartilage as the source tissue or product in the Certificates of Analysis and laboratory reports, and the results of amino acid analyses in these reports.

(Ex. B to Young Decl. at 7 n.1.) In other words, some unspecified portion of Avicenna's product, according to Dr. Blumberg, is comprised of chicken sternum collagen. Dr. Blumberg does not in fact opine that all of Avicenna's product is comprised of chicken sternum collagen. In fact, Dr. Blumberg opines that "[i]t is not possible to determine whether a product is 'pure sternal chicken' in the absence of a standard reference material of sternal chicken collagen type II." (*Id.* at p. 2.) Accordingly, Dr. Blumberg's opinion does not

– 10 –

**Opposition to Clorox's Motion for Summary Judgment**

support the Clorox Defendants' contention that the Joint Complex labeling is true because like Avicenna itself, Dr. Blumberg does not contend that Avicenna's product is comprised of pure chicken collagen. Moreover, to the extent there are differing opinions between the experts (i.e., Dr. Pallas and Dr. Blumberg), this is a question for the jury to resolve that precludes the granting of summary judgment.

### 2.    The Joint Complex Labeling Is Misleading

The Clorox Defendants raise a number of issues with Dr. Gelb's opinion regarding whether the Joint Complex label is misleading, all of which go the weight of Dr. Gelb's testimony rather than to its admissibility.

Dr. Gelb oversaw a survey of 101 rheumatologists who were shown the Joint Complex label. The survey found that 41% of the respondents were deceived by the wording on the label at issue in this case. (Ex. J to Young Decl. at p. 4.) "Specifically, they say that the label states as fact that the product is made of chicken sternum, but not other chicken parts." (*Id.*) Consequently, Dr. Gelb concluded that "the label not only is deceptive advertising if in fact other chicken parts were used, but also that label effectively deceived professionals whose decision on whether or not to recommend the supplement to patients could be influenced by on their perception of its ingredients." (*Id.*)

Dr. Gelb's opinion is reasoned and appropriate for this case. If "a statement is not literally false and is only misleading in context," then "proof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients becomes critical." *William H. Morris*, 66 F.3d at 258; *see also Apple Inc. v. Amazon.com Inc.*, 915 F. Supp. 2d 1084, 1090 (N.D. Cal. 2013) ("[I]f an advertisement is not false on its face ... the plaintiff must produce evidence, usually in the form of market research or consumer surveys, showing exactly what message was conveyed that was

1    sufficient to constitute false advertising."). Here, the fact that the survey
2    overseen by Dr. Gelb showed that 41% of respondents found the advertising
3    deceptive is well within the range of survey experts who have presented sur-
4    vey evidence proving that an advertisement is misleading, *see* 4 McCarthy
5    § 32.54[4] (noting that courts have found evidence sufficient where 21 to 34
6    percent of the recipients were deceived), and the Clorox Defendants do not
7    dispute that the percentage of respondents who found the label misleading is
8    insufficient. Nor do they question generally whether Dr. Gelb's methodology
9    generally was appropriate.

10       Instead, the Clorox Defendants attack Dr. Gelb's opinion solely on the
11   basis that rheumatologists were surveyed instead of individual consumers.
12   (ECF No. 117-1 at pp. 10–15.) Dr. Gelb selected rheumatologists to survey
13   instead of consumers because she considered a survey of rheumatologists to
14   be "much more consequential" than a survey of consumers. (Ex. 19 to Serge-
15   nian Decl. (Transcript of August 20, 2020 Deposition of Betsy Gelb, Ph.D.
16   ("Gelb Dep. Tr.") at 72:11–73:5.) Although she considered surveying consum-
17   ers, she believed that surveying rheumatologists would be more useful be-
18   cause, and based on her background studying consumer behavior, she was
19   attuned to the fact that rheumatologists have influence over patients' pur-
20   chasing behavior (*Id.* at 76:20–78:6; *see also id.* at 125:13–15 (describing
21   rheumatologists as "authority figures").) Dr. Gelb believed that conducting a
22   survey of consumers would not be appropriate because consumers are not the
23   "relevant population." (*Id.* at 82:6–15.) Based on Dr. Gelb's background in
24   consumer behavior, people who are considering healthcare issues go to the
25   "top of the information funnel," which in this case would be a rheumatologist.
26   (*Id.* at 82:16–83:1.) Dr. Gelb determined that rheumatologists are the most
27   relevant subset of physicians to survey and would yield the most accurate
28   results. (*Id.* at 83:11–86:11, 121:4–21.)

**Opposition to Clorox's Motion for Summary Judgment**

The Clorox Defendants point out what they perceive are flaws in Dr. Gelb's decision to have rheumatologists surveyed. For example, the Clorox Defendants fault Dr. Gelb for purportedly relying on a conditions of use disclaimer that she found on the WebMD.com website. (ECF No. 117-1 at 14:12–24.) However, Dr. Gelb's testimony made clear that her insight into consumer behavior with respect to the relevant population was based on her understanding of consumer behavior, rather than reviewing the conditions of use disclaimer. (Ex. 19 to Sergenian Decl. at 72:11–73:5, 76:20–78:6, 82:6–15, 82:16–83:1, 83:11–86:11, 121:4–21.) In fact, Dr. Gelb testified that she merely clicked on the WebMD site "to see what they had to say…" (*Id.* at 74:1–12.) She pulled up the WebMD site merely because she was conducting a Google search using the term "collagen type II supplements" or something similar. (*Id.* at 138:10–138:3.)

The Clorox Defendants also suggest it was an error for Dr. Gelb not to establish that the rheumatologists specifically recommended chicken collagen supplements to patients. (ECF No. 117-1 at 15:7–12.) Dr. Gelb, however, addressed this criticism in her deposition. Specifically, she determined that were she to ask such questions, they would be leading questions. (Ex. 19 to Sergenian Decl. at 127:3–21; *see also id.* at 102:7–105:4 (discussing avoidance of leading questions in surveys).[4]

---

[4] The Clorox Defendants also imply that Gelb chose not to survey actual consumers because it would help Certified Nutraceuticals demonstrate deception. (ECF No. 117-1 at p. 13 n.7), suggesting that Dr. Gelb believed that if she surveyed consumers it would be detrimental to plaintiff's case. That is a distortion of the record; Dr. Gelb did not testify that her choice of whether to survey consumers or rheumatologists was motivated by a fear that consumers would have provided poor evidence of likelihood of deception. Her testimony shows that she came to an independent judgment as to who would be surveyed based on her understanding of the relevant population.

– 13 –

**Opposition to Clorox's Motion for Summary Judgment**

The Clorox Defendants' criticisms of Dr. Gelb's opinion go to the weight that a jury should give to her testimony, not to whether her opinion should be admitted. As a general rule, "courts within the Ninth Circuit are reluctant to exclude survey evidence on the basis of an overinclusive or underinclusive target population." *Icon Enterprises Int'l, Inc. v. Am. Prod. Co.*, No. CV 04-1240 SVW PLAX, 2004 WL 5644805, at *26 (C.D. Cal. Oct. 7, 2004); *see also Morales v. Kraft Foods Grp., Inc.*, No. LACV1404387JAKPJWX, 2017 WL 2598556, at *12 (C.D. Cal. June 9, 2017) (same). The Ninth Circuit has "held that survey evidence should be admitted as long as it is conducted according to accepted principles and is relevant." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010) (alteration omitted). "The admissibility threshold for survey evidence in the Ninth Circuit is notably low." *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1025 (C.D. Cal. 2018).

The Clorox Defendants rely on *Kwan Software Eng'g, Inc. v. Foray Techs.*, LLC, No. C 12-03762 SI, 2014 WL 572290 (N.D. Cal. Feb. 11, 2014), to support their argument that Dr. Gelb's opinion should be excluded. *Kwan* was a much different case. In *Kwan*, which involved photo software, the survey was flawed because instead of surveying software users, the survey expert focused on members of the law enforcement community who merely used photos at work. *Id.* at *4. Accordingly, there was no nexus between the survey respondents (most of whom were unfamiliar with photo software) and the purchasers. *Id.* at *5. Here, by contrast, Dr. Gelb had a reasoned basis for focusing on rheumatologists, as they are likely to influence purchasers' decisions.

In *Quidel Corp. v. Siemens Med. Sols. USA, Inc.*, No. 16-CV-3059-BAS-AGS, 2019 WL 5328730 (S.D. Cal. Oct. 21, 2019), a false advertising and unfair competition case, the plaintiff alleged in the complaint that the false

**Opposition to Clorox's Motion for Summary Judgment**

advertising influenced laboratories to order competing blood assays from the defendant. The plaintiff's expert conducted a survey of physicians, rather than the laboratories that buy the blood assays due to the physicians' influence in ordering blood assays. The court refused to strike the plaintiff's expert, finding that issues with whether the plaintiff's expert surveyed the relevant universe should be decided by the factfinder. The court distinguished *Kwan*, because in *Quidel* the physicians surveyed actually influenced the purchases, unlike the law enforcement community that was surveyed in *Kwan*. *See Quidel*, 2019 WL 5328730, at *3 ("[I]t is possible the physicians' opinions regarding the products are relevant and their opinions could be influenced by marketing or website information. The Court finds that a survey of physicians could be relevant in this case.").

Here, as in *Quidel*, the opinions of the surveyed rheumatologists are relevant because they are influential on the ultimate purchaser. Accordingly, Dr. Gelb's expert testimony should be admissible. *See also Morales* 2017 WL 2598556, at *12 (observing that the survey expert "provides a reasoned explanation for his decision not to limit the survey audience to purchasers of the Product. Therefore, whether that decision should reduce the weight accorded to the survey results is an issue for the finder of fact."); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 947 (C.D. Cal. 2015), aff'd sub nom. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017), and aff'd sub nom. *Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017) (where experts disagreed on the appropriateness of a certain methodology, "the disagreements go to the weight of the results produced by ... [the] methodology, not to its reliability").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### C.    Certified Nutraceuticals Has Sufficient Evidence of Materiality

The Clorox Defendants argue that the false representations on its Joint Complex label are not material. As stated above, because the advertisements and label are false, Certified Nutraceuticals is entitled to a presumption of materiality. *Nutrition Distribution LLC v. PEP Research*, LLC, No. 16CV2328-WQH-BLM, 2019 WL 652391, at *6; *POM Wonderful LLC v. Purely Juice, Inc.*, No. CV-07-02633CAS(JWJX), 2008 WL 4222045, at *11 (C.D. Cal. July 17, 2008), aff'd, 362 F. App'x 577 (9th Cir. 2009) ("Where, as in this case, an advertisement is demonstrated to be literally false, the Court does not need to inquire into whether consumers were deceived or misled. A plaintiff is entitled to relief under the Lanham Act on proof of literal falsity alone, as the court will assume that false statements actually mislead consumers.") (citing *U-Haul Intl., Inc. v. Jartran Inc.*, 793 F.2d 1034 (9th Cir. l986)); *Harper House*, 889 F.2d at 209 (9th Cir.1989) (even in non-comparative advertising case, no need for actual evidence of consumer deception where defendant engaged in intentional deception); *see also Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87 (3rd Cir. 2000) (where claim was "literally false, [plaintiff] did not have to introduce consumer testimony, marketing surveys or proof of lost profits to enjoin the use"); *Energy Four, Inc. v. Dornier Medical Systems, Inc.*, 765 F. Supp. 724, 731 (N.D.Ga.1991) ("When representations are actually false, a court does not have to determine whether the representations are likely to create confusion" and actually false claims are presumed material). In addition, materiality is not a burdensome standard in the Ninth Circuit. For example, in *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105 (9th Cir. 2012), the Ninth Circuit affirmed a grant of partial summary judgment in favor of a Lanham Act false advertising plaintiff, even though the only evidence of materiality was a declaration by a consumer

– 16 –

stating that he had been misled by false and misleading statements in the defendant's advertisements. *Id.* at 1111.

Here, Certified Nutraceuticals has evidence that the label and advertisements are false and misleading, and has conducted a survey to show, in the alternative, that the labeling of the Joint Complex product is misleading. These false statements go to the very heart of the products being sold. Joint Complex contains essentially one ingredient. The labeling only shows the nutritional information for chicken sternal collagen. (Ex. 1 to Alkayali Decl.) That is because the product is a supplement and supplements are typically one-ingredient products that consumers buy for health reasons. Accordingly, any falsity or misrepresentation about that one ingredient is necessarily material. *See POM Wonderful LLC v. Purely Juice, Inc.*, 2008 WL 4222045, at *1 ("The fact that Purely Juice's false advertising pertained to the very nature of its juice product establishes its materiality.") (citing *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242 (11th Cir. 2002) ("A plaintiff may establish this materiality requirement by proving that 'the defendants misrepresented an inherent quality or characteristic of the product.'"). Here, the inherent quality of Joint Complex is its purported Sternal Chicken Collagen content and any falsity or misleading statement about whether that is what consumers are actually buying is material.

The Clorox Defendants rely on several cases that are inapposite. First, *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003), is inapposite because the alleged false statements were contained on video cassette jackets that were never seen by any customers before the customers bought videos over the telephone in response to a toll-free number appearing on television. Here, by contrast, a consumer will be exposed to the label the bottle before purchasing, as well as the advertisements. *Appliance Recycling Centers of Am., Inc. v. JACO Envtl., Inc.*, 378 F. App'x 652 (9th Cir. 2010), is inapposite

**Opposition to Clorox's Motion for Summary Judgment**

because there, the Ninth Circuit held that no reasonable jury could find the statements were misleading. The court found that found the defendant's statement that "no other company could handle polyurethane contaminated with CFC–11" was not literally false because it was ambiguous as to whether "no other company" referred to the plaintiff or the defendant, and there was no evidence of actual deception. *Id.* at 654–55. Finally, *Sidense Corp. v. Kilopass Tech. Inc.*, No. C 11-04112 SI, 2012 WL 3545289 (N.D. Cal. Aug. 16, 2012), is inapposite because it did not involve either a literally false claim or any evidence of likelihood of deception. *Id.* at *10–11.

### D. Certified Nutraceuticals Has Sufficient Evidence of Actual Injury Caused by The Clorox Defendants' Conduct

The Clorox Defendants fault Certified Nutraceuticals' damages expert, David Connelly for not calculating damages suffered by Certified Nutraceuticals. However, it is common in Lanham Act cases for plaintiffs to seek only disgorgement of profits. "Because it often is difficult for a plaintiff to prove actual damages in a false advertising case, the Lanham Act permits a court, 'subject to the principles of equity,' to award damages based on the defendant's profits on an unjust enrichment theory. 15 U.S.C. § 1117(a); *Lindy Pen Co.* [*v. Bic Pen Corp.*], 982 F.2d [1400,] 1407 [(9th Cir. 1993), abrogated by *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016)]." *Fortunet, Inc. v. Gametech Arizona Corp.*, No. 206-CV-00393-PMP-PAL, 2008 WL 5083812, at *8 (D. Nev. Nov. 26, 2008). When assessing profits, the plaintiff need prove only the defendant's sales and the defendant must prove any costs or deductions therefrom. 15 U.S.C. § 1117(a).

The Clorox Defendants claim that Certified Nutraceuticals has no evidence of injury because purportedly there is no evidence of lost customers. The Clorox Defendants' analysis focuses on only a few customers. However, as the Clorox Defendants are aware, following a conference with the

Magistrate Judge in this matter, Certified Nutraceuticals was ordered to provide Defendants with a list of all customers it contended it lost. In the discovery responses, Certified Nutraceuticals disclosed its theory of lost customers in detail. (Ex. 20 to Sergenian Decl. (Plaintiff Certified Nutraceuticals, Inc.'s Third Supplemental Responses to Interrogatories of Defendant Nutranext, Set One) at pp. 3–11; *id.* at pp. 9–11 (listing 45 lost customers and disclosing documents showing the amounts of profits lost).) Even though this disclosures of lost customers was duly-made on May 8, 2020, during the deposition of Mr. Alkayali on June 8, 2020, Defendants' counsel did not ask any questions of the vast majority of these lost customers, but instead focused on the handful of customers addressed in Defendants' motions for summary judgment (Vibrant Health, Emanee, Neocell, Nutranext, and Clorox). (Sergenian Decl. ¶ 19.) Accordingly, the Clorox Defendants' contention that Certified Nutraceuticals has no evidence of injury is incorrect.

In any event, the Clorox Defendants' own expert witness affirms that Certified Nutraceuticals has presented evidence of injury. The Clorox Defendants' expert witness Mr. Zimmer analyzed all 45 of Certified Nutraceuticals' lost customers and the data provided by Certified Nutraceuticals. (*See* Ex. M to Young Decl. at pp. 320–322.) The Clorox Defendants and Mr. Zimmer argue that it cannot be true that Certified Nutraceuticals spent additional advertising, marketing, and related costs to correct the effects of the Clorox Defendants' (and Avicenna's) false advertising. (Clorox's Motion at p. 19; Zimmer Report [Ex. M to Young Decl.] at pp. 5–6.) The evidence they cite to is the assertion that Certified Nutraceuticals' annual expenditures for Advertising & Promotion were purportedly declining from 2016 to 2019. (*Id.*) Mr. Zimmer, however, is cherry picking information. For example, if he had looked at the period from 2017 to 2019, it would have shown an increase in Advertising & Promotion expenditures during that time period. Specifically,

Certified Nutraceuticals' spending on Advertising & Promotion went from $60,452 in 2017 to $89,677 in 2018. (Zimmer Report at p. 5.) This was an increase of 48.34% year-over-year.

Similarly, if Mr. Zimmer had picked the time period from 2014 through 2019 as the relevant time period, it also would have shown an increase in Advertising & Promotion expenditures. In 2014, Certified Nutraceuticals' expenditures on Advertising & Promotion were $55,579. (Zimmer Report [Ex. M to Young Decl.] at p. 5.) If this spending had remained constant, the total expenditures from 2014 through 2019 would have been $333,474 [6 * $55,579]. In reality, because Certified Nutraceuticals had to combat the false advertising by the Clorox Defendants and Avicenna, Certified Nutraceuticals was required to spend $456,972 on Advertising & Promotion from 2014 through 2019. (Zimmer Report at p. 5; Alkayali Decl. ¶ 5.) This was an increase of $123,498, or 37% more than Certified Nutraceuticals would have spent on Advertising & Promotion if the expenditures had remained at 2014 levels from 2014 through 2019. Mr. Alkayali attributes this increase in spending to a conscious effort by Certified Nutraceuticals to educate consumers about the benefits of Certified Nutraceuticals' collagen products that was required by the Clorox Defendants' and Avicenna's wrongful false advertising. (*Id.*)

Likewise, if Mr. Zimmer had chosen the 2017 through 2019 period, he would have come to a similar conclusion. In 2017, Certified Nutraceuticals spent $60,452 for Advertising & Promotion. (Zimmer Report [Ex. M to Young Decl.] at p. 5.) In 2018, the expenditure went up to $89,677. (*Id.*) In 2019, the expenditure went down to $60,111. (*Id.*) If Mr. Zimmer had used the 2017 level of expenditures as a baseline, then one would expect total expenditures on Advertising & Promotion during the three-year period from 2017 through 2019 to be $181,356 [i.e., 3 * $60,452]. In reality, Certified Nutraceuticals

**Opposition to Clorox's Motion for Summary Judgment**

spent $210,240 on Advertising & Promotion from 2017 through 2019. (*Id.*) This was an increase in Advertising & Promotion of 15.9% based on 2017 levels of spending as a baseline.

Accordingly, based on the analysis by Mr. Zimmer (and correcting for his over-selectiveness), it is undisputed that Certified Nutraceuticals suffered an actual monetary injury due to Defendants' false advertising. Furthermore, even if Mr. Zimmer's methodology of picking only the most favorable time periods without any justification were accepted, it would still lead to the conclusion that Certified Nutraceuticals suffered an actual injury. (*See* Ex. M to Young Decl. [Zimmer Report] at pp. 329, 330 (showing Mr. Zimmer's calculation of Certified Nutraceuticals' lost profits).)

### E. Certified Nutraceuticals Has Sufficient Evidence to Support Its Claim for False Designation of Origin

The Clorox Defendants' arguments regarding Certified Nutraceuticals' false designation of origin claim incorporate by reference their arguments concerning Certified Nutraceuticals' false advertising claim. Accordingly, Certified Nutraceuticals incorporates by reference its prior arguments regarding its false advertising claim.

### F. The Clorox Defendants Are Not Entitled to Summary Judgment on Their Unclean Hands Affirmative Defense

The Clorox Defendants' unclean hands theory is based solely on the arguments made by Avicenna in its motion for summary judgment. Accordingly, for the reasons set forth in Certified Nutraceuticals' opposition to

**Opposition to Clorox's Motion for Summary Judgment**

Avicenna's motion, the Clorox Defendants' request that summary judgment be entered on its affirmative defense of unclean hands should be denied.[5]

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff Certified Nutraceuticals respectfully requests that the Court deny The Clorox Defendants' Motion for Summary Judgment in its entirety.

Dated: October 5, 2020      **Sergenian Ashby LLP**

By: _/s/David A. Sergenian_
David A. Sergenian
_Attorneys for Plaintiff Certified Nutraceuticals, Inc._

---

[5] The Clorox Defendants request judicial notice of the summary judgment order by Judge Benitez in _Certified v. Avicenna I_. Certified Nutraceuticals does not object to judicial notice of the fact that the summary judgment order was filed for purposes of determining whether issue preclusion applies. However, Certified Nutraceuticals objects to the extent that the Clorox Defendants are seeking a determination that the summary judgment order in _Certified v. Avicenna I_ is res judicata in this action.

**Opposition to Clorox's Motion for Summary Judgment**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

*Certified Nutraceuticals, Inc. v. The Clorox Company, et al.*, Case No.: 3:18-cv-00744-W-KSC

I hereby certify that on October 5, 2020, I filed the foregoing **Plaintiff Certified Nutraceuticals, Inc.'s Opposition to the Clorox Defendants' Motion for Summary Judgement**, which was served on counsel of record via the Court's CM/ECF electronic filing system, as reflected on the Notice of Electronic File (NEF):

Michael D. Adams
Seth M. Jessee
Sarah Gilmartin
Rutan & Tucker, LLP
611 Anton Boulevard, Suite 1400
Costa Mesa, CA 92626
*Counsel for Defendant*
*Avicenna Nutraceutical, LLC*

Christopher M. Young
Ashleigh Anglietti
DLA Piper LLP
401 B Street, Suite 1700
San Diego, CA 92101
*Counsel for Defendants*
*The Clorox Company,*
*Neocell Holding Company and*
*Nutranext*



*/s/ David A. Sergenian*
David A. Sergenian

**Opposition to Clorox's Motion for Summary Judgment**