UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CERTIFIED NUTRACEUTICALS. INC., <br> Plaintiff, <br> v. <br> THE CLOROX COMPANY, et al., <br> Defendants. | Case No.: 18-cv-0744 W (KSC) <br><br> **ORDER:** <br><br> **(1) GRANTING IN PART AND DENYING IN PART THE CLOROX DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DOC. 117]; AND** <br><br> **(2) GRANTING IN PART AND DENYING IN PART DEFENDANT AVICENNA NUTRACEUTICAL'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT [DOC. 120.]** |

Pending before this Court are Defendants The Clorox Company, Nutranext, and Neocell Holding Company's motion for summary judgment [Doc. 117] and Defendant Avicenna Nutraceutical LLC's motion for summary judgment [Doc. 120]. The Court decides the matters without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons that follow, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** both motions [Docs. 117, 120].

Further, good cause showing, the Court **GRANTS** the parties' respective motions to file under seal [Docs. 115, 118, 124, 127, 131].

## I. BACKGROUND

The Clorox Company, Neocell Holding Company, and Nutranext (collectively "the Clorox Defendants") are retailers that sell dietary supplements using the raw materials provided by Plaintiff Certified Nutraceuticals Inc.'s ("Certified") competitor, Defendant Avicenna Nutraceutical LLC ("Avicenna"). (*J. Stmt. Undisputed Facts* [Doc. 130] ¶¶ 6–9.)

Certified brings two claims under the Lanham Act based on allegations that the Clorox Defendants and Avicenna engaged in a scheme to falsely advertise the source of chicken collagen used in dietary supplements sold to retail consumers. (*Third Amended Complaint ("TAC")* [Doc. 50] ¶¶ 1, 2.) Specifically, Certified claims the Clorox Defendants labeled their Collagen2 Joint Complex ("CJC") product as containing "Chicken Sternum Collagen Type II," but that the collagen in the product is not pure sternal collagen, but rather collagen produced by Avicenna using chicken carcasses of inferior quality which are much more inexpensive to produce. (*Id.* ¶¶ 18–20.)

The Clorox Defendants and Avicenna have now filed timely motions seeking summary judgment in their favor on Certified's Lanham Act claims. The Clorox Defendants' motion seeks to establish the following:

(1) Certified cannot demonstrate that the product label was false or misleading, or that any deception was material;
(2) Certified has presented no evidence of damages; and
(3) Certified's unclean hands bar any recovery.

(*Clorox P&A* [Doc. 117-1] 1:19–2:2.) Avicenna's motion seeks to establish that:

(1) Certified cannot show a false or misleading advertisement by Avicenna;
(2) Certified cannot establish an actual injury;
(3) In the alternative, that Certified cannot prove damages for Avicenna's sales after January 2018; and
(4) Certified's unclean hands bar any recovery.

(*Avicenna P&A* [Doc.120-1] 1:20–23.)

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. Id. at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159–60 (1970).

If the moving party meets this initial burden, the nonmoving party cannot avoid summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." In re Citric Acid Litig., 191 F.3d 1090, 1094 (9th Cir. 1999) (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995) (citing Anderson, 477 U.S. at 252) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for

trial.'" Ford Motor Credit Co. v. Daugherty, 279 Fed. Appx. 500, 501 (9th Cir. 2008) (citing Celotex, 477 U.S. at 324). Additionally, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587.

Rule 56(d) provides for partial summary judgment. See Fed. R. Civ. P. 56(d) ("[T]he court . . . shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted."). Under Rule 56(d), the court may grant summary judgment on less than the non-moving party's whole claim. Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc., 313 F.3d 385, 391 (7th Cir. 2002) (Posner, J.). Partial summary judgment is a mechanism through which the Court deems certain issues established before trial. Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) (quoting 6 Moore's Federal Practice ¶ 56.20 (3.–2) (2d ed. 1976)). "The procedure was intended to avoid a useless trial of facts and issues over which there was really never any controversy and which would tend to confuse and complicate a lawsuit." Id.

### III.  MOTIONS TO SEAL

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" Kamakana v. City and County of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 & n. 7 (1978)). Although access to judicial records is not absolute, there is a "narrow range" of documents that have traditionally been kept secret for policy reasons: "grand jury transcripts and warrant materials in the midst of a preindictment investigation." Id. (citing Times Mirror Co. v. United States, 873 F.2d 1210, 1219 (9th Cir. 1989)). The importance of this narrow range is that "[u]nless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." Id. (citing Foltz v. State Farm Mutual Auto. Insurance Company, 331 F.3d 1122, 1135 (9th Cir. 2003)).

"[T]he strong presumption of access to judicial records applies fully to dispositive pleadings, including motions for summary judgment and related attachments." Kamakana, 447 F.3d at 1179.  The reason is "because the resolution of a dispute on the merits, whether by trial or summary judgment, is at the heart of the interest in ensuring the 'public's understanding of the judicial process and of significant public events.'" Id. (quoting Valley Broadcasting Co. v. U.S. Dist. Ct., 798 F.2d 1289, 1294 (9th Cir. 1986)).  "Thus, 'compelling reasons' must be shown to seal judicial records attached to a dispositive motion." Id. (citing Foltz, 331 F.3d at 1136).  This standard applies "even if the dispositive motion, or its attachments, were previously filed under seal or protective order." Id.  Relying on "a blanket protective order is unreasonable and is not a 'compelling reason' that rebuts the presumption of access." Id. at 1183 (citing Foltz, 331 F.3d at 1138).

The compelling reasons standard imposes a high threshold on parties seeking to maintain the secrecy of documents attached to dispositive motions. Kamakana, 447 F.3d 1180.  "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." Id. at 1179 (quoting Nixon, 435 U.S. at 598).  "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." Id. (quoting Foltz, 331 F.3d at 1136).

The parties have requested to file numerous exhibits under seal. [Docs. 115, 118, 124, 127, 131].  After review, these exhibits and references to them in the parties' briefs reveal confidential proprietary business and financial information.  Disclosing such information to the public would cause competitive harm to the parties.  As such, compelling reasons exist to file the specified documents under seal.  See, e.g., In re Electronic Arts, 298 F. App'x 568, 569 (9th Cir. 2008) (stating that compelling reasons

may exist if sealing is required to prevent documents from being used "as sources of business information that might harm a litigant's competitive standing").

## IV. DISCUSSION

Avicenna begins its motion for summary judgment by arguing that Certified's claims are barred by the doctrine of unclean hands. The Clorox Defendants join in Avicenna's arguments and incorporate them by reference in their separately-filed motion for summary judgment.

### A. Unclean Hands

In a prior case between Avicenna and Certified, Judge Benitez granted summary judgment in Avicenna's favor on Certified's Lanham Act claim because "Certified brought its claims with unclean hands by engaging in the same improper conduct for which it faulted Avicenna—publishing false statements about a product being 'patented' without a patent." (*Ex. C to Avicenna P&A* [Doc. 120-4.] 2:8-10.) Defendants contend that the doctrines of unclean hands and issue preclusion bar Certified's claims here. The Court disagrees.

Unclean hands is a defense to a Lanham Act infringement suit, but the defendant must demonstrate that the plaintiff's conduct relates to the subject matter of its claims. See FLIR Sys., Inc. v. Sierra Media, Inc., 965 F. Supp. 2d 1184, 1197 (D. Or. 2013); Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837, 847 (9th Cir. 1987). For unclean hands, "'[i]t is fundamental to [the] operation of the doctrine that the alleged misconduct by the plaintiff relate directly to the transaction concerning which the complaint is made.'" Dollar Sys., Inc. v. Avcar Leasing Sys., Inc., 890 F.2d 165, 173 (9th Cir. 1989) (quoting Arthur v. Davis, 126 Cal.App.3d 684, 693–94, (Cal. Ct. App. 1981)). The misstatement must be material and misleading. Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837, 847 (9th Cir. 1987).

Defendants argue that because Certified engaged in the same type of wrongful conduct that forms the basis of its claims against Avicenna—falsely representing an essential characteristic of its product that is responsible for its purported health benefits—unclean hands bars its claims.  However, the alleged misconduct by Certified does not directly relate to the claims here.  The crux of the Complaint in the previous case was that Avicenna was marketing its products by making false claims about whether the products enjoyed a patent monopoly.  This action concerns a claim about false statements regarding whether and to what extent the product is chicken sternal collagen.  Misstatements of patent ownership do not directly relate to misstatements about a product's ingredients.

### B. False Advertising

There are five elements of a Lanham Act false advertising claim:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997).  To demonstrate falsity, a plaintiff may show the statement was literally false or that it was literally true but likely to mislead consumers.  Id.  A claim for literal falsity must be analyzed in its full context such that a claim may be literally false by necessary implication.  Id.

#### 1. Literally False

As discussed above, Certified contends the Clorox Defendants' CJC product "lists as an ingredient 'Sternal Chicken Collagen,' however, independent testing has revealed the contents of this product are not comprised of pure Sternal

Chicken, but rather chicken carcasses of inferior quality which are much more inexpensive to produce." (TAC ¶ 31.) Likewise, Certified claims "Avicenna sells chicken collagen which it passes off as Chicken Sternum Collagen Type II, but, in reality, is derived from Chicken 'full frames.'" (*Id.* ¶ 19.) Clorox Defendants and Avicenna both contend Certified cannot demonstrate that the listing of sternal chicken collagen on the product label is false or misleading.

The evidence shows that CJC does in fact contain sternal chicken collagen. Avicenna claims its process derives chicken collagen that is 90 percent sternum cartilage. Independent testing of Avicenna's collagen backs this up, showing batches purchased from Avicenna contained sternal chicken collagen in substantially similar amounts to Certified's product. It is therefore literally true for the Clorox Defendants and Avicenna to advertise their products as containing sternal chicken collagen.

Certified contends the issue is not merely that Defendants advertise their products as containing some portion of sternal chicken collagen, but rather that Defendants advertise their products as 100% sternal chicken cartilage. Avicenna has advertised its product as "Avian (Chicken) Sternum Cartilage" (used pre-2018) and "Chicken (Avian) Full Frame Sternum Cartilage" (used post-January 2018). Although there is no established definition of sternal chicken collagen in the industry, there is a triable issue as to whether the term "Avian (Chicken) Sternum Cartilage" necessarily leads a consumer to understand Avicenna's product is 100% sternum cartilage. By advertising its purportedly single-ingredient product as chicken sternal collagen, Avicenna appears to be representing that the entire product is chicken sternal collagen.

As for the phrase used post-January 2018—"Chicken (Avian) Full Frame Sternum Cartilage"—it cannot be said that it is literally false. It is an accurate depiction of Avicenna's manufacturing process: deriving chicken sternum collagen from the full frame of a chicken.

Because Avicenna's product is not derived from pure chicken sternum, Certified argues the Clorox Defendant's product also must be false. Specifically, Certified claims

1  the statement on the CJC product label that a serving of the product contains 2,400 mg of
2  sternal chicken collagen protein is literally false.  Unlike Avicenna, the Clorox
3  Defendants did not advertise their product as comprised of only a single ingredient.
4  Rather, they advertise that CJC contains 2,400 mg of sternal collagen among other
5  ingredients.  The Clorox Defendants therefore argue that just because the source of
6  collagen in CJC is not made of pure sternal chicken collagen does not necessitate that it
7  invariable contains less than 2,400 mg.  However, the other ingredients are listed, and
8  none of them correlate with a suggestion that the source of sternal collagen is not pure.
9  Certified has not supplied any evidence, other than supposition, that CJC does not in fact
10 contain 2,400 mg of sternal chicken collagen.  It has therefore failed to make a showing
11 that there is no genuine issue of material fact as to this element.  Because the raw
12 ingredient of CJC is not made of 100% collagen type II from chicken sternal cartilage, a
13 factfinder could conclude that labeling the CJC product as pure sternal chicken cartilage
14 is literally false.

15      However, a jury could very easily lean against a finding of literal falsity, in which
16 case, Certified would need to show that the advertisements were at least misleading.

17          **2.      Misleading**

18      If an advertisement is not literally false, a plaintiff must provide extrinsic evidence
19 showing that the advertisement either deceived or has the tendency to deceive customers.
20 Southland Sod Farms, 108 F.3d at 1140.  "Even if an advertisement is not literally false,
21 relief is available under [the Lanham Act] if it can be shown that the advertisement has
22 misled, confused, or deceived the consuming public . . . typically tested through the use
23 of consumer surveys."  Id.

24      Certified has failed to provide evidence showing a likelihood of customer
25 deception.  The two populations likely to be misled were consumers comprising a
26 "substantial segment of the public," and manufacturers of collagen supplements.  (*TAC* ¶
27 33.)  The one survey Certified has presented is not representative of a population that
28 actually consumes the product.  The survey tested a population of non-customers—

rheumatologists. (*See Gelb Report* [Doc. 117-12]; *Gelb Decl.* [Doc. 117-11].) Further, the surveyor that conducted the survey had no evidence that rheumatologists actually influence buyers of the product. The product is not prescribed by a physician and the surveyor failed to establish that any of her survey respondents specifically recommended sternal chicken collagen supplements to patients.

Additionally, the rheumatologists surveyed reviewed the supplement label on Clorox's product, not Avicenna's. Avicenna has produced declarations of its customers stating Avicenna never represented its product as 100% sternum and that customers understood that it was not. Thus, Certified has failed to present evidence that either the Clorox Defendants or Avicenna's customers were likely to be deceived. Summary Judgment is granted as to this element. Since the alternate element of literal falsity survives, the Court continues its analysis of the relevant elements of the false advertising claim.

### 3. Injury

To prevail on its false advertising claim, Certified must show that it "has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." Southland Sod Farms, 108 F.3d at 1139. Certified claims it "has suffered both an ascertainable economic loss of money and reputational injury" as a result of Defendants' alleged false labeling. (*TAC* ¶ 38.) Specifically, it claims monetary damages in the form of lost customers, reduced profits, additional advertising costs, and lost market share. (*Clorox P&A* 17:13-15).

In asserting it has suffered direct injury, Certified presents as evidence the following: (1) a list of 45 customers it contends it lost; and (2) profit and loss data indicating its profits declined and Advertising and Promotion expenses increased over disputed time periods. (*Opp'n to Clorox MSJ* [Doc. 126] 19:2-7; 19:15-21:3.)

Clorox Defendants argue Certified has presented no evidence to substantiate its claim that it: (1) lost customers or market share as a result of Defendants'

labeling; or (2) spent additional advertising, marketing and related costs to combat the effects of Defendants' alleged false labeling. (*Clorox P&A* 18:6–19:19.)

Avicenna argues Certified has not presented sufficient evidence to satisfy its burden of demonstrating it lost any customers as a result of Defendants' labeling because: (1) the five customers Certified purports to have lost to Avicenna have sworn under oath that they did not purchase Avicenna's product based on the alleged misrepresentation; and (2) Certified's theory as to why these customers were diverted to Avicenna is supported only by "hearsay, speculative testimony." (*Avicenna P&A* 19:13-21:4.)  Further, Avicenna argues Certified failed to make any effort to show what, if any, sales of Avicenna's product are attributable to the alleged misrepresentations. (*Id.* 23:2-7.)

Citing 15 U.S.C. § 1117 (a) and Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400 (9th Cir. 1993), a false comparative advertising case, Certified argues it should be entitled to damages based on Defendants' profits under an unjust enrichment theory. (*Opp'n to Clorox MSJ* 18:15-19.)  Further, Certified argues that because Defendants' expert's conclusion could have been different had he used an alternate date range to conduct his analysis, that Certified has presented evidence of injury. (*Id.* 19:25-21:11.)

The Court disagrees with Certified's reasoning for the following reasons.

    a)    <u>Non-comparative false advertising</u>

In seeking damages under section 43(a) of the Lanham Act, providing "actual evidence of some injury resulting from the deception is an essential element of the plaintiff's case." Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 210 (9th Cir. 1989).  "[A]n award of profits with no proof of harm is an uncommon remedy in a false advertising suit." TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 831 (9th Cir. 2011).

Where advertising does not directly compare the defendant's product against the plaintiff's, as in the case of false noncomparative advertising cases, plaintiffs

must produce proof of past injury or causation. See id. In TrafficSchool, the Ninth Circuit held that the defendants' use of the website DMV.org deceived a substantial segment of its audience into believing its third-party referrals were recommended by the state's DMV, and that this could reasonably lead the defendants to capture market share from the plaintiff. TrafficSchool, 653 F.3d at 826–29. However, despite presenting evidence its business decreased over a number of years, TrafficSchool did not provide evidence quantifying its harm nor did it show its decrease in business was specifically caused by the defendants' deceptive practices. Id. at 831; TrafficSchool, 633 F.2d 1063 at 1073-74 and 1087 (affirmed in TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820 (9th Cir. 2011)). The district court, therefore, had no way of determining with any degree of certainty what award would be compensatory. TrafficSchool, 653 F.3d at 831.

Unlike in TrafficSchool, where the plaintiff presented evidence that its business decreased over a period of years, the data provided by Certified shows its sales actually increased over the time period for which full year data is supplied. (*Ex. M, Zimmer Report* [Doc 116-7] p. 330.) While Certified shows a loss in profitability, this is due to a large increase in the cost of sales in 2019 for which advertising costs remain a negligible proportion. (*Id.*) Since Certified's Complaint rests on the argument that Defendants' alleged false advertising affected its sales, it is not reasonable for the Court to assume the significant unaccounted for increase in the cost of sales, which could be attributed to the cost of goods sold among other things, is a direct result of Defendants' product labeling.

Despite stating in its TAC that "as of February of 2018, and on information and belief, continuing to the present, the [Clorox] Defendants falsely advertised CJC products at numerous retail outlets across the country…," Certified claims the alleged false advertising started as early as April 2016. (*TAC* ¶ 23.) However, observing Certified's advertising costs beginning with the year ended December 31, 2016, the company's advertising costs have declined through the alleged

damages period. (*Ex. M, Zimmer report* [Doc 116-7] p. 328.)  Further, Certified does not establish causation: the Advertising expense data is presented without any supplemental evidence linking the costs, or a portion thereof, to educating consumers as a result of the alleged false advertising of Defendants.  (*Id*.)  Certified's attempts to recalculate its advertising expenses by way of Defendants' expert report lacks any support or foundation.  Given such a dearth of supporting evidence, it is unreasonable for the Court to assume every dollar Certified spent on advertising from 2016 on forward was for the purpose of combating Defendant's alleged false advertising.[1]

      Certified argues in its Opposition that it lost 45 customers as a result of Defendants' alleged false advertising.  Certified provided this list in an interrogatory response.  (*Ex. H, Certified's Third Supplemental Responses to Clorox's Interrogatory Nos. 15 and 17* [Doc. 116-5].)  However, when questioned about this list, Certified's CEO testified that it was merely a list of all the customers who bought collagen from Certified since 2012.  (*Ex. C, Alkayali Dep.* [Doc 133-4] 337:21-338:6.)  Such a list does not prove that any of those customers were lost as a result of Defendants' false advertising.  Importantly, the majority of sales from these 45 customers had already rolled off by 2016.  (*Zimmer Report* p. 329.)  Further, the five customers Certified's CEO actually identified as being lost because of Defendants' false advertising, as opposed to merely the 45 customers it had in 2012, have all indicated that their decision to stop using Certified's product was not due to deception.  (*Ex. D, Alkayali Dep*. [Doc. 116-4] 203:17-204:16; 213:3-12.)  Four of the five have sworn under oath that they did not purchase the competing product of Defendant Avicenna based on any representations that the product was derived from 100% chicken sternum.  (*See Ex. W, Stroup Decl*. [Doc.

---

[1] Avicenna's evidentiary objection to Certified's use of Paragraph 5 of the Alkayali Declaration claiming corrective advertising expenses as actual injury is overruled.  [Doc. 136.]

120-6]; *Ex. X, Quadri Decl.*[Doc. 120-6]; *Ex. Y, Cuadro Decl.* [Doc. 120-6]; *Ex. Z, Timon Decl.* [Doc. 102-6].)  As for the fifth customer, the evidence indicates it had not purchased collagen from Certified since 2014, years before the alleged false advertising began.  (*Zimmer report* p. 329.)

For the foregoing reasons, Certified has not established it suffered actual injury as a result of Defendants' alleged false advertising.

b) Unjust Enrichment

Citing 15 U.S.C. § 1117(a) and Lindy, Certified argues that "because it is often difficult for a plaintiff to prove actual damages in a false advertising case, the Lanham Act permits a court, 'subject to the principles of equity,' to award damages based on the defendant's profits on an unjust enrichment theory." (*Opp'n to Clorox MSJ* 18:15-22.)  Further, Certified argues that when assessing profits under 15 U.S.C. § 1117(a), "the plaintiff need prove only the defendant's sales and the defendant must prove any costs or deductions therefrom." (*Id.* 18:22-24.)  However, 15 U.S.C. § 1117(a) and Lindy both address damages in false comparative advertising cases, where a defendant violates "any right of the registrant of a mark registered in the Patent and Trademark Office."  15 U.S.C. § 1117(a).

In Lindy, suit was brought against Bic for advertising one of its pen models using the "Auditor's" moniker, which Lindy had trademarked fourteen years prior. Lindy, 982 F.2d at 1403 (abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co., 839 F.3d 1179 (9th Cir. 2016)).  Contrastingly, in TrafficSchool, the Ninth Circuit noted that "neither the comparative advertising nor good will cases are relevant here," because the advertising in question concerned a defendant promoting a product as different than what was ultimately delivered as opposed to its violating the rights of registrants of a mark. TrafficSchool, 653 F.3d at 831.  Similarly here, Certified is not claiming Defendants' violated Certified's rights as registrants of a mark but that Defendants

advertised their product as being pure sternal chicken collagen despite being made from full frames. Thus, damages under the theory of unjust enrichment are not applicable.

Summary judgment is granted as to this element. However, in addition to damages, Certified asks for injunctive relief enjoining Defendants from false advertising of their CJC products. "[A] competitor need not prove injury when suing to enjoin conduct that violates section 43(a)." Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 210 (9th Cir.1989). The Lanham Act claim is therefore still viable even though Certified has failed to raise a triable issue as to injury. See Southland Sod Farms, 108 F.3d at 1145–46 (9th Cir. 1997) ("[E]ven if Plaintiffs had failed to raise a triable issue as to causation and injury, their Lanham Act claim would still be viable to the extent it sought an injunction.").

### C. False Designation of Origin

A false designation of origin claim requires proof that a defendant "(1) use[d] a designation (any word, term, name, device, or any combination thereof) or false designation of origin; (2) the use was in interstate commerce; (3) the use was in connection with goods or services; (4) the designation or false designation is likely to cause confusion, mistake, or deception as to (a) the affiliation, connection, or association of defendant with another person, or (b) as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person; and (5) plaintiff has been or is likely to be damaged by these acts." Summit Tech., Inc. v. High–Line Med. Instruments, Co., 933 F.Supp. 918, 928 (C.D. Cal.1996). "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service." Dreamwerks Prod. Grp., Inc. v. SKG Studio, 142 F.3d 1127, 1129 (9th Cir.1998).

Certified's false designation of origin claim fails for the same reasons discussed above. First, Certified has failed to provide evidence showing a likelihood of customer

deception.  As explained above, Certified did not conduct an adequate survey of consumers in the marketplace. Thus, Certified has failed to present evidence that either the Clorox Defendants or Avicenna's customers were likely to be deceived.  Second, Certified has failed to show that it has been or is likely to be damaged by either Avicenna's or the Clorox Defendants' alleged false designation of origin.  Summary Judgment is granted as to this claim.

## V.     CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** both motions for summary judgment [Docs. 117, 120].

**IT IS SO ORDERED.**

Dated:  September 29, 2021

_____
Hon. Thomas J. Whelan
United States District Judge