CHRISTOPHER M. YOUNG (Bar No. 163319)
christopher.young@dlapiper.com
ASHLEIGH ANGELETTI (Bar No. 265392)
ashleigh.angeletti@dlapiper.com
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel: 619.699.2700
Fax: 619.699.2701

Attorneys for Defendants
The Clorox Company, Nutranext, and Neocell Holding Company

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

CERTIFIED NUTRACEUTICALS, INC., a California corporation,

Plaintiff,

v.

THE CLOROX COMPANY, a Delaware Corporation; NEOCELL CORPORATION, a California Corporation; NEOCELL HOLDING COMPANY, a Delaware Limited Liability Company; NUTRANEXT, a Delaware Corporation; AVICENNA NUTRACEUTICAL, LLC, a Georgia Limited Liability Company; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 3:18-CV-00744-W-KSC

**THE CLOROX DEFENDANTS' REQUEST: (1) TO CLARIFY ORDER GRANTING IN PART AND DENYING IN PART THE CLOROX DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND (2) FOR LEAVE TO FILE SUCCESSIVE SUMMARY JUDGMENT MOTION ON ISSUE OF INJUNCTIVE RELIEF AND AMEND SCHEDULING ORDER ACCORDINGLY**

Ctrm: 4C
Judge: Hon. Thomas J. Whelan

Defendants The Clorox Company, Nutranext, and Neocell Holding Company (collectively "the Clorox Defendants") respectfully seek clarification of the Court's Order Granting In Part and Denying In Part the Clorox Defendants' Motion for Summary Judgment (Dkt. No. 141). The Clorox Defendants also seek leave to file a successive motion for summary judgment with respect to the claim for injunctive relief by Plaintiff Certified Nutraceuticals ("Plaintiff"), and request a modification of the Scheduling Order to accommodate the second summary judgment motion.

These requests are supported by good cause, and are squarely in the interest of judicial efficiency. Plaintiff's remaining claims in this matter are at best narrow in scope. Plaintiff's single surviving potential claim would involve a remedy solely for injunctive relief, based solely upon a potential finding that the Clorox Defendants' labeling of the Neocell Collagen2 Joint Complex product is literally false. But the Clorox Defendants have already changed the product label to remove the challenged reference to "sternal" chicken collagen. Accordingly, clarification as to the specific statement that the Court found may be considered literally false will either illuminate the issues for trial, or inform the basis for a potential second motion for summary judgment that will likely obviate the need for a trial altogether.

## I. Request to Clarify Summary Judgment Order

The Clorox Defendants first request clarification of the Court's Order denying the Clorox Defendants' Motion for Summary Judgment with respect to Plaintiff's claim that the labeling of the Collagen2 Joint Complex product is literally false. The Clorox Defendants seek clarification of the following language from the Order: "Certified has not supplied any evidence, other than supposition, that CJC does not in fact contain 2,400 mg of sternal chicken collagen. It has therefore failed to make a showing that there is no genuine issue of material fact as to this element. Because the raw ingredient of CJC is not made of 100% collagen type II from chicken sternal cartilage, a factfinder could conclude that labeling the CJC product as pure sternal chicken cartilage is literally false." (Dkt. No. 141, Order, at 9.)

Specifically, the Clorox Defendants seek to clarify the Court's ruling that "[b]ecause the raw ingredient of CJC is not made of 100% collagen type II from chicken sternal cartilage, a factfinder could conclude that labeling the CJC product as pure sternal chicken cartilage is literally false." (*Id*.) The Clorox Defendants note in this regard that the Court also found that "[u]nlike Avicenna, the Clorox Defendants did not advertise their product as comprised of only a single ingredient." (Id.)[1] Because the Collagen2 Joint Complex product was never advertised as containing pure or "single ingredient" sternal chicken collagen, the Clorox Defendants request clarification as to which aspect of the label could, in the Court's view, be found to suggest that the product contains "pure sternal chicken cartilage," and thus potentially as literally false.

If the Court views the statement on the label as to the specific amount of chicken collagen included—2,400 mg—as potentially literally false, the Clorox Defendants believe they have met their burden to show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Indeed, this Court itself made an express finding to the same effect, as quoted above, that "Certified has not supplied any evidence, other than supposition, that CJC does not in fact contain 2,400 mg of sternal chicken collagen." (Dkt. No. 141, Order at 9.) As the Clorox Defendants pointed out in their summary judgment briefing, Plaintiff has no evidence—through testing or analysis of the product, documentation, or otherwise—showing that Collagen2 Joint Complex does not contain 2,400 mg of sternal chicken collagen in a serving. (Dkt. No. 133, Reply, at 4-5.)

/ / /

---

[1] This finding comports with the Clorox Defendants' summary judgment motion, which established that the Clorox Defendants did not at any time label or advertise the Collagen2 Joint Complex product as pure or "single ingredient" sternal chicken collagen. (Dkt. No. 117, MSJ, at 9). Plaintiff adduced no evidence to refute this fact.

If, on the other hand, the Court found that the reference on the label to "sternal chicken collagen," regardless of amount, could be found to suggest purity and thus be literally false, the Clorox Defendants wish to address whether injunctive relief based on this statement is moot in a successive motion for summary judgment. The Clorox Defendants maintain that such relief would in fact be moot, as set forth below.

## II. Request for Leave to File Successive Summary Judgment Motion

Second, and following from the discussion above, the Clorox Defendants respectfully request leave to file a successive summary judgment motion on the issue of Plaintiff's claim for injunctive relief and request that the Court modify the Scheduling Order to accommodate the second motion.

"[D]istrict courts have discretion to entertain successive motions for summary judgment[.]" *Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010). Rule 56 does not limit the number of summary judgment motions that may be filed and allows for exceptions to the default time limits to be made by local rule or court order. Fed. R. Civ. P. 56(c)(1). "[A]llowing a party to file a second motion for summary judgment is logical, and it fosters the 'just, speedy, and inexpensive' resolution of suits." *Id.* (quoting Fed. R. Civ. P. 1). Additionally, courts may modify previously entered scheduling orders when the proponent demonstrates good cause. Fed. R. Civ. P. 16(b)(4)); *see Mendoza v. United States, No. 15CV1528-JAH (BGS),* 2018 WL 1898553, at *2 (S.D. Cal. Apr. 20, 2018) (permitting amendment to the scheduling order and a successive summary judgment motion where "the core principles underlying the doctrine would be diluted, depriving a defendant of a speedy and just resolution, if a defendant were forced to trial despite assertion of a viable … defense.").

Good cause exists to grant the Clorox Defendants' request. Injunctive relief represents Plaintiff's single surviving claim for relief in this matter, and it has not yet been briefed by the parties or decided by the Court. *Cf. Knox v. Sw. Airlines*, 124

F.3d 1103, 1106 (9th Cir. 1997) (courts retain discretion to "weed out frivolous or simply repetitive motions."). A successive motion for summary judgment on this issue will in all likelihood conclude the case, fostering the just, speedy, and inexpensive resolution of this matter.

There are at least two reasons why Plaintiff's claim for injunctive relief is subject to summary judgment. First, Plaintiff is not able to meet the elements for a permanent injunction because it has suffered no injury, much less one that is "irreparable." A plaintiff seeking a permanent injunction must establish: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). When a plaintiff moves for injunctive relief on a defendant's false statements, "[a] showing of literal falsity alone is insufficient to warrant permanent injunctive relief" as "the Lanham Act requires proof of likelihood of future injury" and "'a plaintiff seeking a permanent injunction must satisfy [the eBay, Inc.] four-factor test[.]'" *Kurin, Inc. v. Magnolia Med. Techs., Inc.*, 473 F. Supp. 3d 1117, 1134 (S.D. Cal. 2020) (quoting *eBay Inc.*, 547 U.S. at 391); *accord Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 310 F. Supp. 3d 1089, 1128 (S.D. Cal. 2018) (Plaintiff "still must meet all the prongs for [a] permanent injunction" under the Lanham Act).

Here, as this Court has already found, Plaintiff has adduced no evidence of lost customers, reduced profits, increased advertising costs, lost market share, or reputational injury. (Dkt. No. 141, Order, at 10-15.) It is therefore impossible that Plaintiff could show any form of irreparable injury to support a request for

/ / /

/ / /

injunctive relief.[2] The Clorox Defendants believe summary judgment is warranted on Plaintiff's request for injunctive relief on this ground alone.

Plaintiff's claim for injunctive relief is also subject to summary judgment because the Clorox Defendants have already changed the label of the product at issue. In 2019, the Clorox Defendants changed the label of the Collagen2 Joint Complex product, removing the words "sternal chicken" from the ingredient list. (Dkt. No. 117-5, Young Decl. ISO MSJ, Ex. F., CN000001-CN000004, CN000751-CN000754.) The product now lists *hydrolyzed* chicken collagen as an ingredient. (*Id*.) It is common for courts to reject claims for injunctions to change labels as moot, once defendants have changed the labels in question. *See In re Hain Celestial Seasonings Prods. Consumer Litig.*, No. SACV1301757AGANX, 2017 WL 11633199, at *3 (C.D. Cal. June 20, 2017) (injunctive relief claim moot because defendant "removed the '100% Natural' label from its packaging for marketing reasons, [and] filed a sworn declaration from a high-ranking executive promising that the company won't reintroduce such labels and advertisements"); *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, No. C10-861 RSM, 2015 WL 1735517, at *9 (W.D. Wash. Apr. 15, 2015) (granting summary judgment on Lanham Act injunctive relief claim based on false advertising where there was no evidence of willfulness, the challenged labels had been changed, and defendant submitted a letter stating that the subject products would continue to be properly labeled in the future).

The Clorox Defendants submit that addressing the issue of injunctive relief immediately, "rather than reserving the issue for trial, would best serve the interests of justice and judicial economy[,]" particularly when doing so "may narrow the issues for trial and facilitate settlement discussions, or potentially dispose of [a

---

[2] This is particularly so because independent comparison testing of Plaintiff's own collagen product against Avicenna's product shows substantially similar amounts of type II collagen in both products. (Dkt No. 117, MSJ, at 10.)

party's] remaining claims and end this case." *Thornton v. Ethicon Inc.*, No. CV2000460TUCJCHEJM, 2021 WL 2661220, at *2 (D. Ariz. Apr. 26, 2021).

**III. Conclusion**

For the foregoing reasons, the Clorox Defendants respectfully seek clarification of the Court's Order Granting In Part and Denying In Part the Clorox Defendants' Motion for Summary Judgment. The Clorox Defendants also seek leave to file a successive motion for summary judgment with respect to Plaintiff's claim for injunctive relief and request a modification of the Scheduling Order to accommodate the second summary judgment motion.

Respectfully submitted,

Dated: October 28, 2021

**DLA PIPER LLP (US)**

By: */s/ Christopher M. Young*
Christopher M. Young
Ashleigh L. Angeletti

Attorneys for Defendants
The Clorox Company, Nutranext, and Neocell Holding Company