UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CERTIFIED NUTRACEUTICALS, INC., a California corporation,<br><br>                                    Plaintiff,<br><br>v.<br><br>  THE CLOROX COMPANY, et al.,<br><br><br>                                    Defendants. | Case No.: 3:18-cv-744-W-KSC<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DOC. 168]** |

Pending before the Court is Defendants The Clorox Company, Nutranext, and Neocell Holding Company's (collectively, "Defendants") motion for summary judgment. (*Mot.* [Doc. 168].) Plaintiff Certified Nutraceuticals, Inc. opposes and requests that its Opposition be filed under seal. (*Opp'n* [Doc. 169]; *Mot. to File Docs Under Seal* [Doc. 170].) The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS** Plaintiff's motion to file its Opposition under seal [Doc. 170] and **GRANTS** Defendants' motion for summary judgment. [Doc. 168].

1

I.  **BACKGROUND**[1]

Defendants are manufacturers and retailers[2] of dietary supplements. (*Third Amended Compl.* "*TAC*" [Doc. 50] ¶¶ 21-23.) Plaintiff Certified Nutraceuticals sells various ingredients for nutraceutical companies, with a specialization in collagen ingredients. (*Id.* ¶ 14.) On April 17, 2018, Plaintiff filed this lawsuit asserting two claims (among others) under Section 43(a) of the Lanham Act based on allegations that Defendants engaged in a scheme to falsely advertise the source of chicken collagen used in dietary supplements sold to consumers. (*Id.* ¶¶ 1-2.) Specifically, Plaintiff claims that Defendants' Collagen2 Joint Complex product is falsely labeled as containing "Chicken Sternum Collagen Type II" because the collagen in the product is not pure sternal chicken collagen. (*Id.*)

In 2019, Defendants allegedly updated the labels of a number of their products in order to have more standardized brand messaging across their product portfolio. (*Decl. of Christopher Young* ("*Young Decl.*") [Doc. 168-3] ¶ 2, Ex. A, at 119-121.) As part of those updates, Defendants changed the language on the Collagen2 Joint Complex label, replacing the term "sternal chicken collagen" with "hydrolyzed chicken collagen" as a listed ingredient because "the language was thought to resonate better with consumers." (*Id.* at 119-121, 144-45, 149.)

On September 14, 2020, Defendants filed their first motion for summary judgment. [Doc. 117]. Defendants argued, in relevant part, that (1) Plaintiff could not demonstrate

---

[1] A more detailed factual background is available in the previous motion for summary judgment Order. [Doc. 141].

[2] Defendant Nutranext is a health and wellness company that manufactures and sells dietary supplement products; Defendant The Clorox Company is a global company with various strategic business units, including Nutranext; and Defendant Neocell Holding Company is an entity surviving Nutranext's acquisition of a now-defunct entity known as Neocell Corporation. Neocell Holding Company now operates solely as a holding company for certain tax liabilities. (*J. Stmt. Undisputed Facts* [Doc. 172-7] ¶¶ 2-5.)

that the product label was false or misleading, or that any deception was material; and (2) Plaintiff had no evidence of damages or harm, including lost customers, reduced profits, additional advertising costs, and lost market share. (*Id.* at 3.) Defendants did not address Plaintiff's claim for equitable relief. (*See generally id.*)

On September 29, 2021, the Court granted in part and denied in part Defendants' motion for summary judgment, leaving Plaintiff with a claim for injunctive relief based on a potential finding that "labeling the [Collagen2 Joint Complex] product as pure sternal chicken cartilage is literally false." [Doc. 141]. Defendants now move for summary judgment with respect to Plaintiff's sole, remaining claim for injunctive relief.[3]

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The essential inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. A motion for summary judgment is designed to "prevent vexation and delay, improve the machinery of justice, promote the expeditious disposition of cases, and avoid unnecessary trials when no genuine issues of fact have been raised." 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2712 (4th ed. 2022).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party can satisfy this burden in two ways: (1) by presenting

---

[3] On March 3, 2022, the Court granted Defendants' motion to amend the scheduling order to allow Defendants to submit a second motion for summary judgment. [Doc. 167].

3

evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. Id. at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citation omitted).

If the moving party meets this initial burden, the nonmoving party cannot avoid summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." In re Citric Acid Litig., 191 F.3d 1090, 1094 (9th Cir. 1999) (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate '*specific facts* showing that there is a genuine issue for trial.'" Ford Motor Credit Co. v. Daugherty, 270 Fed. Appx. 500, 501 (9th Cir. 2008) (citing Celotex, 477 U.S. at 324) (emphasis added).

At this stage, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the party opposing the [summary judgment] motion." Scott v. Harris, 550 U.S. 372, 378 (2007) (quoting U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curium)). Although the moving party "bears the initial responsibility" of "demonstrat[ing] the absence of a genuine dispute of material fact," the plain language of Rule 56 "mandates the entry of summary judgment [. . .] against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. at 322-23.

### III.   MOTION TO SEAL

Plaintiff requests to file its Opposition along with the Declaration of Ahmad Alkayali and Exhibit C to the Declaration of Valerie Saryan under seal. [Doc.

1   170]. After review, these documents reveal confidential proprietary business
2   information. Disclosing such information to the public would cause competitive
3   harm to the parties. As such, compelling reasons exist to file the specified
4   documents under seal. See, e.g., In re Electronic Arts, 298 F. Appx 568, 569 (9th
5   Cir. 2008) (stating that compelling reasons may exist if sealing is required to
6   prevent documents from being used "as sources of business information that might
7   harm a litigant's competitive standing") (citation omitted). Therefore, with good
8   cause shown, Plaintiff's request to file the Opposition with supporting documents
9   under seal is **GRANTED**. [Doc. 170].

**IV.   DISCUSSION**

Plaintiff's sole, remaining claim is for injunctive relief based on "whether the labeling of the [Collagen2 Joint Complex] product is literally false." (*Mot.* at 10.) Plaintiff seeks to enjoin "Defendants from falsely marketing or advertising products containing mislabeled Chicken Collagen Type II that falsely states 'sternal chicken collagen' as an ingredient." (*J. Stmt. Undisputed Facts* [Doc. 172-7] ¶ 18.)

Defendants argue that injunctive relief is moot because they already changed the allegedly false label from their product line and averred that they "will not resume use of the phrase 'sternal chicken collagen' on the Collagen2 Joint Complex labeling, at any time." (*Decl. of Ashley Kern* ("*Kern Decl.*") [Doc. 168-5] ¶¶ 7, 10.) Accordingly, Defendants argue that an injunction is unnecessary because the "false phrase" Plaintiff seeks to enjoin is no longer used on the Collagen2 Joint Complex label. (*Mot.* at 3.)

Plaintiff counters that an injunction is <u>not</u> moot because Defendants are still selling old products with the allegedly false label, and without a court order, there is nothing stopping Defendants from reverting to their old ways. (*Opp'n* at 7-8.) The issue is whether Plaintiff's claim for injunctive relief is moot.

The judicial power of the United States is limited to "cases" and "controversies." U.S. Const. art. III, § 2. "[A]n actual controversy must be extant at all stages of review,

1 not merely at the time the complaint is filed." <u>Arizonans for Official. English v. Ariz.</u>,
2 520 U.S. 43, 67 (1997) (internal quotations omitted).  "A case is moot when the issues
3 presented are no longer 'live' or the parties lack a legally cognizable interest in the
4 outcome." <u>City of Erie v. Pap's A.M.</u>, 529 U.S. 277, 287 (2000).  The central question is
5 "not whether the precise relief sought at the time the application for an injunction was
6 filed is still available.  The question is whether there can be *any effective relief*." <u>See
7 West v. Sec'y of Dept. of Transp.</u>, 206 F.3d 920, 925 (9th Cir. 2000) (emphasis added;
8 internal quotations omitted).

9       "A defendant cannot, however, automatically moot a case simply by ending
10 its unlawful conduct once sued." <u>Already, LLC v. Nike, Inc.</u>, 568 U.S. 85, 87
11 (2013); <u>see also</u> <u>City of Mesquite v. Aladdin's Castle, Inc.</u>, 455 U.S. 283, 289
12 (1982) ("It is well settled that a defendant's voluntary cessation of a challenged
13 practice does not deprive a federal court of its power to determine the legality of
14 the practice.").  Voluntary cessation of the challenged conduct moots a case only if
15 it is "*absolutely* clear that the allegedly wrongful behavior could not be reasonably
16 expected recur." <u>Adarand Constructors, Inc. v. Slater</u>, 528 U.S. 216, 221 (2000)
17 (emphasis in original; internal quotations omitted).  The "heavy burden" of
18 persuading the court that the challenged conduct cannot be reasonably expected to
19 recur lies with the party asserting mootness.  <u>Id.</u> at 222.

20       <u>In re Hain Celestial Seasonings Prods. Consumer Litig.</u>, is particularly helpful for
21 this analysis.  2017 WL 11633199, at *3 (C.D. Cal. June 20, 2017).  In that class action
22 suit, plaintiff sued defendant (a tea company) for advertising that its teas were "100%
23 Natural" when the products were alleged to contain various artificial contaminants.  <u>Id.</u> at
24 *1.  During litigation, however, the defendant tea company "substantially altered its
25 advertising practices" by removing the "100% Natural" label from its packaging for
26 marketing reasons and "filed a sworn declaration from a high-ranking executive
27 promising that the company would not reintroduce such labels and advertisements." <u>Id.</u>
28 at *3.  It also shipped out new products with revised packaging, removed the allegedly

1  misleading labels from its own website and social media accounts, submitted new
2  product images to various third-party online retailers (even though they were not named
3  defendants in this case), and encouraged the third-party retailers to use and promote the
4  revised packaging. Id. at 4. As a result, the Court held that injunctive relief was moot
5  because there was no reasonable "threat that the wrongful conduct will continue" in the
6  face of the defendant's "commitment to change its labeling practices." See id. (quoting
7  Colgan v. Leatherman Tool Grp., Inc., 135 Cal. App. 4th 663, 702 (2006)).

8  　　　　Similarly, in Cascade Yarns, Inc. v. Knitting Fever, Inc., plaintiff sued several
9  defendants for false advertising related to the country-of-origin labels on defendants'
10 yarns. 2015 WL 1735517, at *2 (W.D. Wash. Apr. 15, 2015). After an initial summary
11 judgment motion, the sole remaining issue was whether injunctive relief was available to
12 prevent mislabeling from reoccurring in the future. Id. One defendant admitted that its
13 yarns were sold without being properly labeled prior to trial but asserted that the yarns
14 currently on the market bore the correct labels and submitted a letter confirming that all
15 new products would be properly labeled in the future. Id. at *8. The Court found that
16 this defendant met its burden to show that reform was irrefutable and total, so ruled that
17 the injunctive relief claim was moot. Id. at *9.

18 　　　　Like in Cascade Yarns and In re Hain, Defendants here removed the disputed term
19 from the label in question and filed an affidavit stating that they would not revert to the
20 use of the phrase "sternal chicken collagen" at any time. (*Kern Decl.* ¶¶ 7, 10.).
21 Therefore, "the statement on which Certified based its claim for literal falsity no longer
22 exists," so an order prohibiting Defendants from listing "sternal chicken collagen" as an
23 ingredient would serve no purpose. (*Mot.* at 12.)

24 　　　　In opposition, Plaintiff argues that injunctive relief is not moot because Defendants
25 are still selling their old inventory with the disputed label. (*Opp'n* at 5-6.) Plaintiff's
26 evidence comes from product listings on two third-party websites. (*Decl. of Valerie*
27
28

*Saryan* ("*Saryan Decl.*") [Docs. 168-3; 168-4] ¶¶ 2-3, *Exs. A, B*.)[4]  Plaintiff produced screenshots from Ubuy.com and Amazon.com where, as of April 2022, Collagen2 Joint Complex is still advertised as containing "100% pure collagen type II from chicken sternal collagen."  (*Id.*)  However, according to the U-buy.com website, "[u]nless otherwise specified, U-buy is not affiliated with the manufacturers of the products found on this site and products found here are independently sourced on behalf of the buyer."  (*Reply Young Decl.* [Docs. 172-2; 172-4] ¶ 3, *Ex. B* at 4.)  Also, while Defendants do sell Collagen2 Joint Complex on Amazon.com through an official first-party listing, the printout Plaintiff submitted is of a third-party listing of the product sold by "RockmountainCo." (*Reply* [Doc. 172] at 2.)  Defendants maintain that they are not affiliated with RockmountainCo.  (*Reply Decl. of Vanetia Cannon-Thurman* ("*Reply Cannon-Thurman Decl.*") [Doc. 172-1] ¶ 7.)  Further, Defendants claim that they do not "provide the third parties controlling these websites with the product descriptions" and do not "have control over these third-party listings, statements, or advertisements." (*Id.* ¶ 9.)  Defendants argue that because they have no control over these third-party sellers, an injunction against Defendants would not result in these listings being taken down.  (*Reply* at 3.)

      Generally, a court may not enjoin a non-party to the action before it; only parties or nonparties who are in "active concert or participation with" the enjoined party may be bound by an injunction.  Fed. R. Civ. P. 65(d)(2).  The test for determining exactly who is

---

[4] Defendants object to the inclusion of all of Plaintiff's evidence attached to Valerie Saryan's Declaration because her Declaration is unsigned.  (*Evidentiary Objections* [Doc.172-6] at 2.)  Pursuant to 28 U.S.C. Section 1746, all affidavits are required to be signed under the penalty of perjury.  An unsigned declaration is an inadmissible document because there is no proof that the declarant saw the document or approved of its contents.  See Elder-Keep v. Askamit, 460 F.3d 979, 984 (8th Cir. 2006).  For the sake of argument, however, the Court will address the evidence contained in the Declaration.  In addition, the Court sustains Defendants' objection to paragraph four of Ahmad Alkayali's Declaration.  As discussed in more detail below, this paragraph is irrelevant and improperly introduces new legal theories in violation of Federal Rule of Civil Procedure 8(a)(2).

1 | in active concert or participation with the enjoined party depends on the facts of each
2 | case.  See, e.g., Homeland Housewares, LLC v. Euro-Pro Operating LLC, 2014 WL
3 | 4449922, at *3 (C.D. Cal. Sept. 10, 2014).

4 |     For example, in Aevoe Corp. v. AE Tech Co., a retailer who was not a party to the
5 | action had an exclusive distribution agreement with the enjoined party, had notice of the
6 | injunction, and had been told which products were enjoined.  727 F.3d 1375, 1384 (Fed.
7 | Cir. 2013).  Because the nonparty retailer was dependent on the enjoined party, the Court
8 | found that they were in active concert and thus, the nonparty retailer was subject to the
9 | original injunction.  Id.

10 |    On the other hand, in Paramount Pictures Corp. v. Carol Pub. Grp., Inc., non-party
11 | retailers purchased the allegedly infringing novels from the enjoined party (a publishing
12 | company) *before* the injunction was granted.  25 F.Supp.2d 372, 376 (S.D.N.Y 1998).
13 | The Court found that the nonparty retailers and the enjoined publishing company were
14 | not acting in concert, despite having a past contractual relationship because the book
15 | sales were complete before the injunction was granted.  Id.  (relying on Regal Knitwear
16 | Co. v. N.L.R.B., 324 U.S. 478, 481 (1945) ("[t]he courts [. . .] may not grant an
17 | enforcement order or injunction so broad as to make punishable the conduct of persons
18 | who act independently and whose rights have not been adjudged according to the law."))

19 |    Here, the circumstances are more analogous to Paramount Pictures Corp., 25
20 | F.Supp.2d 372 where the court found that the book retailers were not "in active concert"
21 | with the enjoined party.  The nonparty retailers at Ubuy.com and Amazon.com do not
22 | have any distribution agreements with Defendants (exclusive or otherwise).  (*Reply
23 | Cannon-Thurman Decl.* ¶¶ 6-9.)  Defendants do not "provide the third parties controlling
24 | these websites with the product descriptions" and do not "have control over these third-
25 | party listings, statements, or advertisements."  (*Id.* ¶ 9.)  Thus, it cannot be said that
26 | Defendants are acting in concert with these nonparty retailers.  And because Defendants
27 | are not acting in concert with the nonparty retailers, the nonparties cannot be bound by an
28 | injunction.  Therefore, an injunction would have no effect here.  See e.g., Cascade Yarns,

2015 WL 1735517, at *8 (Courts "need not waste judicial resources fashioning an entirely superfluous remedy.").

Next, Plaintiff argues that an injunction is still necessary because without it, Defendants can simply revert to their old labeling practices any time business reasons dictate. (*Opp'n* at 7-8.)  Standing alone, the fact that Defendants have ceased labeling the Collagen2 Joint Complex product with "sternal chicken collagen" does not moot Plaintiff's claim for injunctive relief.  For cessation of unlawful conduct to moot claims for injunctive relief, the defendant bears the burden to show that its reform is irrefutable and total.  See Polo Fashions, Inc. v. Dick Bruhn, Inc., 793 F.2d 1132, 1135 (9th Cir. 1986.  The Ninth Circuit has recognized that voluntary cessation arguments may be rebutted by showing the allegedly lawful conduct was "motivated be economic [or] business considerations."  See Pub. Utils. Comm'n of State of Cal. v. F.E.R.C., 100 F.3d 1451, 1460 (9th Cir. 1996).

Defendants maintain that their decision to update the labels on Collagen2 Joint Complex was made for independent business reasons to ensure uniform messaging across their product profile and because the new language was thought to "resonate better with consumers." (*Kern Decl.* ¶¶ 6-9.)  Defendants aver that "[i]t would not only be costly and burdensome to resume use of the phrase 'sternal chicken collagen' on the Collagen2 Joint Complex label, but it would also be incongruous with the labeling on other Neocell brand products."  (*Id.* ¶ 10.)

Plaintiff counters that "[o]ne representation in a declaration of a five year Nutranext employee is not a sufficient assurance that [Defendants] will actually discontinue future false advertising of Collagen2 Joint Complex." (*Opp'n* at 8).  But the Ninth Circuit is clear that "[n]either a desire to cross-examine affiant nor an unspecified hope of undermining his or her credibility suffices to avert summary judgment, unless other evidence about an affiant's credibility raises a genuine issue of material fact." Frederick S. Wyle Prof'l. Corp. v. Texaco, Inc., 764 F.2d 604, 608 (9th Cir. 1985). Plaintiff has not produced such evidence.

As the nonmoving party, Plaintiff is required to designate "*specific facts* showing that there is a genuine issue for trial." See Celotex Corp., 477 U.S. at 324 (emphasis added). But Plaintiff has not produced any evidence that *Defendants* are selling old inventory with the allegedly false label. Under these circumstances, Defendants have satisfied their "heavy burden of persuasion" to show that "the likelihood of further violations is sufficiently remote to make injunctive relief unnecessary." See U.S. v. Concentrated Phosphate Exp. Ass'n, 393 U.S. 199, 203 (1968). Accordingly, there is no reasonable expectation that Defendants will revert to their old labeling practices. See, e.g., U.S. v. W. T. Grant Co., 345 U.S. 629, 633 (1953) ("[t]he case may nevertheless be moot if the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated") (internal quotations omitted). Therefore, because Defendants have provided adequate assurance that they will not sell Collagen2 Joint Complex with "sternal chicken collagen" on its label at any time in the future, the Court finds that the reform was irrefutable and total.[5]

Finally, Plaintiff argues for the first time in this litigation that injunctive relief is still necessary because Defendants' updated product label still contains false and misleading statements. (*Opp'n* at 7.) However, Plaintiff may not raise a new theory not included in its complaint for the first time in opposition to a motion for summary judgment. Doing so violates Federal Rule of Civil Procedure 8(a)(2), which "requires that the allegations in the complaint 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Pickern v. Pier 1 Imports (U.S.), Inc., 457 F.3d 963, 968 (9th Cir. 2006) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002)); see also Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1080 (9th Cir. 2008) ("[W]here, as here, the complaint does not include the necessary factual allegations to

---

[5] Because Plaintiff's injunctive relief claim is moot, the Court need not consider Defendants' argument regarding standing or whether Plaintiff can show past irreparable harm or likelihood of future injury to warrant a permanent injunction. See In re Hain, 2017 WL 11633199, at *4.

state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court.").

This ruling does not mean Defendants can simply revert to the old labels with impunity. If Defendants ultimately fail to honor all of the representations made to this Court, Plaintiff will be "armed with powerful evidence of wrongdoing." See In re Hain, 2017 WL 11633199, at *4. But for the sake of judicial efficiency, the Court need not waste resources fashioning a superfluous remedy. Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's remaining claim for injunctive relief is **GRANTED**.

V. **ORDER & CONCLUSION**

In light of the foregoing, the Court **GRANTS** Plaintiff's Motion to file its Opposition under seal [Doc. 170] and **GRANTS** Defendant's motion for summary judgment. [Doc. 168].

**IT IS SO ORDERED.**

Dated:  July 18, 2022

_____
Hon. Thomas J. Whelan
United States District Judge